PAULINE ROZWADOSFSKIE v. INTERNATIONAL & GREAT NORTHERN
RAILWAY COMPANY.

No. 38.

1. **Proximate Cause—Case in Judgment.**—Action by widow for damages for negligently causing the death of her husband. She had sent her two sons to the railway depot to bring their father home, expecting him to arrive as a passenger, intoxicated. The sons were ordered from the depot by the agent in charge. The husband arrived on the train after the boys had left, intoxicated, but knowing what he was doing. He left the train, deposited his baggage, and left the depot. Subsequently he returned, went to sleep upon the track, and was run over by another, a freight train, and killed. In such case it can not be held that the driving of plaintiff's sons from the depot, preventing them from meeting their father and conducting him home, was the immediate and proximate cause of his death, and that therefore the railway company was liable in damages for his death.

2. **Remote Cause.**—The wrong in driving the boys from the depot was too remote from the injury to create liability.

**3. Duty to Passenger.** — When a passenger has safely alighted from a train and left the depot at his destination, the railway company does not owe him any further or peculiar duty from the fact that he may be intoxicated.  See facts.

**4. Care by Railway Company to Avoid Injury Upon the Track.** If a person lying asleep upon a railway track is seen by those managing an approaching train in time, and they are aware of his danger, and by ordinary care they can avoid injury, they are bound to do so.

**5. Duty of Railway Company to Keep Lights, etc.** — It is the duty of a railway company to keep lights at proper times at its depots, approaches, and other places connected therewith, which are likely to be visited by passengers and persons lawfully on the premises; and a negligent omission of such duty causing injury would entitle the injured party, without fault on his part, to damages.  But see facts where such duty was not shown.

**6. Charge to Find for Defendant.** — Where the evidence shows that the death for which damages are claimed was attributable to his negligence, without fault on the part of the defendant or its employes, it was the duty of the court to instruct the jury to find for the defendant.

APPEAL from Hays.    Tried below before Hon. H. TEICHMUELLER.

*Gustave Cook, Ford & Neighbors, J. J. Butts,* and *J. M. Moore,* for appellant.—1.  The court erred in instructing the jury to find for the defendant, because the evidence before the court showed, that the plaintiff, Pauline Rozwadosfskie, anticipating that her husband would arrive on defendant's train incapacitated to care for and protect himself by reason of his intoxicated and imbecile condition, sent her two sons, Frank and Martin Rozwadosfskie, to defendant's depot at San Marcos, to meet him on his arrival there and conduct him safely home.    That her two sons were at said depot lawfully, and were intimidated, frightened, and terrified by the rough language of C. Collins, with threats to have them put in jail unless they should leave and not come back to said depot any more, by reason of which conduct and threats her said sons left said depot before the arrival of the train bringing their father, plaintiff's husband.  That her said sons, on former occasions and under similar circumstances, had met their father, plaintiff's husband, at defendant's depot and conducted him safely home, and would have done so on this occasion had they not been unlawfully driven away from defendant's depot by its agent, C. Collins, in the manner and under the circumstances aforesaid; and that the driving off of plaintiff's said sons from said depot, and preventing them from meeting their father, plaintiff's husband, on his arrival at defendant's depot at San Marcos, and conducting him safely home, was the immediate and proximate cause of the deceased being then and there injured by defendant's freight train, and his consequent death, and defendant is legally responsible for his death.    Rev. Stats., arts. 2899, 2900, 2901, 2903, 2904; Goddard v. Railway, 57 Me., 202; Railway v. Moose, 83 Va., 831; Patt. Ry. Acc. Law, sec. 278; Beach on Neg., 390, 391; 2 Beach Mod. Law Rys., secs. 864, 885; Railway v. Sullivan, 81 Ky., 624.

2. It is an implied condition in a contract with a passenger, especially as to an infirm passenger, that his friends may enter the depot and grounds at the place of destination to receive and care for him, and the wanton refusal to permit this is a breach of the carrier's contract, entitling recovery for any resulting injury; and if the passenger from any cause be insensible, defendant is estopped from pleading contributory negligence.  Hamilton v. Railway, 64 Texas, 253.

3. The court below erred in instructing the jury to find a verdict for the defendant; because the defendant was guilty of gross negligence in not having its depot, platform, grounds, and approaches thereto so lighted as that the several agents and employes, in operating approaching trains, could see persons and obstructions on or near said depot, tracks, or platform and approaches thereto; and by reason of such gross negligence on the part of defendant, it is liable and responsible in law to plaintiff in damages for the death of her said husband.  Bish. on Non-Cont. Law, sec. 1086; Patt. Ry. Acc. Law, 253, 438, 443; Railway v. Crosnoe, 72 Texas, 79.

*W. O. Hutchison* and *Thomas H. Franklin*, for appellee.—1. The undisputed evidence in the case shows, that plaintiff's deceased husband entered upon a passenger train of defendant at Kyle, Texas; that he was under the influence of liquor, but not imbecile; that he was safely transported by defendant to San Marcos, his destination, and there safely delivered; and that, after reaching San Marcos, he left defendant's depot and depot grounds safely and went up into the town of San Marcos, and there remained for sometime; and that the relation of carrier and passenger between him and defendant had, long before he received the injuries which caused his death, entirely ended, and therefore plaintiff had no cause of action, under the facts in evidence, against defendant for any failure to safely and securely transport her said husband from Kyle to San Marcos.  Patt. Ry. Acc. Law, sec. 221; Alberton v. Railway, 34 Am. and Eng. Ry. Cases, 563; The State v. Railway, 58 Me., 176; Commonwealth v. Railway, 1 Am. and Eng. Ry. Cases, 457.

2. There was no evidence whatever to show that the persons operating said train were guilty of any negligence whereby plaintiff's husband was injured; and inasmuch as plaintiff's said husband was when injured voluntarily upon the track of defendant, it devolved upon her to prove affirmatively that his death was caused through the negligence of defendant's servants in operating the train which ran over him, and that deceased was guilty of no negligence contributing to his death; and in the absence of such proof plaintiff has no cause of action against defendant. Railway v. Evans, 71 Texas, 366; Railway v. Ryon, 70 Texas, 56; Railway v. Porter, 73 Texas, 304.

COLLARD, ASSOCIATE JUSTICE.—This is a suit by the appellant, plaintiff below, for herself, as widow, and the minor children of herself and Frank Rozwadosfskie, for damages against the appellee, defendant below, resulting from the alleged negligent killing of Frank Rozwadosfskie by defendant, by running its freight train over him, at San Marcos, Texas, on the 9th day of December, 1888.

The court below instructed the jury to find for the defendant, which they did, and the judgment was so rendered; from which the plaintiff has appealed.

The facts of the case are as follows:

Deceased was about forty years old, a carpenter by trade, earning about $2.25 per day; a strong, robust man, and in good health. He lived with his family at San Marcos, Texas, about 230 or 265 yards from defendant's depot. He was working at his trade at Kyle, through which defendant's railway passed, about eight miles northeast of San Marcos. For several nights prior to the 9th of December, 1888, he was expected home as a passenger on defendant's train. He sometimes drank to excess after his week's work, when he was paid off, and his wife was expecting him home in an intoxicated condition. She sent her two boys, Martin and Frank, aged respectively 13 and 10 years, to meet him at the train and to conduct him home in case he was drunk. The boys had frequently met him at the train, and had brought him home, and on one occasion he was drunk, "not very," he never having refused to go with them. The night of December 9 was cold, and the two boys were at the depot, in the waiting room, where there was a fire, expecting their father on the train due later in the night. The station agent asked them what they were there for. Frank, the older boy, replied that they were there waiting for their father, who was coming on the train from Kyle. He told them that they had been there two or three nights, waiting for him, and that he had not come, and was not coming, and that if they did not leave the depot, and not come around there any more, he would have them arrested and put in jail. His manner and language were rough, and so frightened them that one of them was crying. They were not misbehaving. One of them had been seen about the depot, swinging on the steps of the cars and jumping off while the cars were in motion. They left, and when they got outside, a policeman told them to run on home and come back when they heard the whistle blow. This was 9 or 10 o'clock p. m. They went home and went to sleep, did not hear the whistle, and were not there when their father arrived on the train, between 10 and 11 o'clock on the same night, the 9th of December, 1888.

Deceased boarded the train at Kyle about 10 o'clock that night. Witness Johnson went with him to the depot and carried his baggage and assisted him on the train. He was drunk, but not imbecile. He knew what he was doing and where he was going; gave Johnson 25 cents, the

exact amount, to purchase him a ticket to San Marcos.   He staggered in walking several times, and would have fallen if Johnson had not assisted him.   He had a bottle of whisky.   In getting on the train he came near falling, and would have done so if Johnson had not caught him.   The conductor was looking at him at the time.   The steps from the ground were high, and there was no stool, and he had to catch hold of the step rail and pull himself up.   The conductor on the train knew his drunken condition.   He was helped on to the first seat after entering the car.

When the train arrived at San Marcos, deceased threw his bundle of clothes, or something of the kind, out before him on the platform, and then got out himself and leaned up against the car, when some gentleman took hold of him, pulled him away, and told him to "look out." After the train left, he was seen in the depot at the ticket window, talking to Mr. Collins, the agent, about his baggage, and said he would leave it there till morning.

Witness Meredith, speaking of this, says further:   "I then came out of the depot house and started up to town, and when I was about Prince's lunch stand, deceased called me, and came up behind me, and we then walked on together up to Brown & Lindsay's livery stable, 200 yards from the depot.   Deceased caught hold of Mr. Summerrow, who was with me, and said, ' You are not afraid of me, are you?' to which Mr. Summerrow replied, ' No, I am not afraid of you.'   Mr. Summerrow pulled away from him, and we walked on together.   Deceased followed us some 10 or 15 steps, and said to us that ' we could get all the drink we wanted, that the houses were all open here yet.'   Deceased then turned back toward the depot house, and I and Mr. Summerrow came on up to town.   That was the last I saw of the deceased till the 10th of December, 1888.   I saw him at his house in San Marcos, dead.   He was a stranger to me."

The statements quoted of this witness are true, and are corroborated by Mr. Summerrow, except that he did not hear the conversation with the agent.

The depot is 700 or 800 feet from the home of deceased, 100 or 200 feet further than the livery stable near which Meredith last saw him.

The platform extends along the track east and west of the depot building; is about $2\frac{1}{2}$ or 3 feet higher than the track, and about 3 feet from the track.

Dr. Atkinson was called to deceased after he was hurt, and found him on the west end of the platform, about 70 feet from the depot at San Marcos.   He testified, and we so find the facts:

"His left arm was mangled, he had three scalp wounds, and his left leg was seriously injured.   He died next morning from the injuries. He had been run over by the wheels of the cars, as was evident from the condition of the wounds.   When I arrived at the depot the hind wheels

of the caboose of the freight train were standing about 35 feet from the body of the deceased. Blood was found on the car next to the tender, but none on the wheels of the engine or tender. There was blood be-. tween the rail and the platform. He was strong, robust, and healthy. It was evident that the wheels of one car had run over him. Deceased was evidently under the influence of liquor and had lain down and gone to sleep."

The evidence does not show any further particulars of the manner of the killing.

It is contended by appellant, "that the driving of plaintiff's sons from the depot, and preventing them from meeting their father and conducting him home, was the immediate and proximate cause of his death," and that therefore defendant would be liable in damages for his death in this suit.

This proposition, in our opinion, is not the law of the case.

It must be borne in mind that plaintiff can not recover unless the deceased himself could successfully maintain the action if living and suing in his own behalf for the injuries received. Rev. Stats., art. 2090.

Plaintiff's sons had the right to be in the waiting room of defendant's depot to await the arrival of their father and conduct him home, and the act of the agent in sending them away might be held to be grossly wrong, and had they been injured thereby the company would be liable therefor, if the agent was acting within the scope of his authority. Hamilton v. Railway, 64 Texas, 251.

But it would not necessarily follow from this that the company would be liable for the death of their father, whose contributory negligence was the proximate cause of the same.

At the time the agent required the boys to leave the depot, he did not know the deceased was drunk and would arrive in that condition, nor did he know that they were sent there to protect him on the way home on account of his expected helplessness from intoxication. He only knew that they were there to meet him. This being so, the wrong was too remote from the injury to create liability. Had he known all the facts, then his act would have included all its reasonable and probable consequences flowing therefrom. He and his principal could be held culpable only for what was known to him, or what he would be presumed to know. 1 Sherm. & Redf. on Neg., secs. 29, 26, 27, 28.

Under the circumstances of the case, we do not think the company owed him any peculiar duty after his arrival at San Marcos. Had he required assistance on account of his helpless condition while the relation of carrier and passenger existed, the company may have been negligent in refusing it. But he required no assistance at that time. Patt. Ry. Acc. Law, sec. 278.

Circumstances would control this liability. He was not discharged at

an unusual place, where the company would be bound to protect him further or be held bound for any danger he might voluntarily incur.

This case is not at all similar to the one cited by appellant, Railway v. Sullivan, 81 Kentucky, 624, where an inebriated passenger was ejected from the cars, away from any station, in the snow, who, before he could obtain relief, the temperature being ten degrees below zero, had his feet, hands, shoulder, parts of his legs and of one arm frozen.

We select this case, cited by appellant, to illustrate the distinction that should be made. The principle governing that class of cases and the one at bar is not the same. The difference is quite apparent. In the case at bar, the passenger reached his destination, voluntarily alighted from the train, as was his duty to do at the end of his journey, at a regular station in a town near his home, made arrangements for his baggage, and left the depot and premises of the defendant, and thereby unquestionably ended all further obligations on the part of the company to him, whether he was sick, intoxicated, or sober. The company certainly, under these circumstances, had discharged all its obligations to him, and owed him no further duty as a passenger. Patt. Ry. Acc. Law, secs. 220, 221.

He afterward returned and laid down in such proximity to or upon the track as to endanger his life by moving trains; and, in fact, so lost his life. He could not claim immunity from the rule of contributory negligence because he was then drunk, unless the facts show such negligence or want of care on the part of defendant's servants as would render the company liable, notwithstanding his own negligence. The fact that he was there drunk and asleep would not justify the defendant's servants in running the train over him and taking his life. If he was seen by them in time, and they were aware of his danger, and by ordinary care they could have avoided the injury, they were bound to do so; but there is no testimony of this character. Railway v. Evans, 71 Texas, 369; Beach on Con. Neg., 390, 391; Railway v. Sympkins, 54 Texas, 623; Patt. Ry. Acc. Law, secs. 76, 77, 78.

There is no such negligence shown on the part of defendant or its servants as will render it liable for the death of the deceased, nor such as would relieve him of the consequences of his own negligence directly contributory thereto.

A part of defendant's answer, read in evidence by plaintiff, is claimed by appellant to show negligence on the part of the company that would entitle her to a recovery. The extract is as follows:

"That the place where he so lay down was darkened by the shadow of said platform, and he was obscured from the view from any one on any part of any approaching train, and could not have been seen by the exercise of the utmost care and caution on the part of the persons in charge of such approaching train."

In this connection, it should be stated that it was also averred and

proved, that after the relation of carrier and passenger ceased the deceased left the depot and voluntarily returned and lay down near defendant's railway track, between the track and the depot platform, and there went to sleep.

The portion of the answer read does not disclose actionable negligence on the part of defendant.

It is the duty of the company to keep lighted, at proper times, its depot, approaches, and other places connected therewith which are likely to be visited by passengers and persons lawfully on the premises; and a negligent omission of this duty, causing injury, would entitle the injured party, without fault on his part, to damages. Bish. on Non-Cont. Law, sec. 1086.

But contributory negligence on the part of the person injured might, as before explained, defeat the right of recovery, as in this case we think it did.

There is, however, another ground upon which the averment in defendant's answer can not be made available in establishing its negligence. It is not shown that lights were needed at the point indicated, for the convenience of any person visiting the depot or for the purpose of moving the trains. It could not be presumed, in the absence of testimony, that a light should be placed so as to discover persons that might be lying in such an unusual place, asleep or drunk. There was no testimony upon the subject, and the allegation does not show the necessity for such a light. Therefore negligence on the part of the company can not be rested upon it.

The evidence was very meagre as to how the accident occurred, outside of the fact that the deceased was lying near the track asleep, in a place of great danger; no evidence that the train men or any of the company's servants saw him, knew or ought to have known that he was there, or that they were guilty of any negligence causing the injury. All that the evidence shows is, that the occurrence was attributable to the negligence of the deceased, without fault on the part of defendant or its employes, and for which it is not liable.

In such case it was the duty of the court to instruct the jury to find for defendant. Railway v. Porter, 73 Texas, 307; Railway v. Dean, 76 Texas, 73.

The judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Delivered November 23, 1892.