Houston East & West Texas Railway Company v. J. F. Grubbs.

Decided March 27, 1902.

1.—Railway Company—Unlighted Depot Platform.

No duty as arising to a passenger devolves upon a railway company to keep lighted that portion of its depot platform not intended for the use of passengers and to which they would not ordinarily resort.

2.—Same—Injury to Passenger—Liability.

A railway company is not liable for injury received by a passenger in stepping through a hole in a part of the depot platform used, to his knowledge, exclusively for handling freight, when he had gone there on a dark night to relieve himself, and there was a closet across the track, thirty or forty feet distant, the way to which was lighted.

Appeal from Nacogdoches. Tried below before Hon. Tom C. Davis.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellant.

*E. B. Lewis,* for appellee.

PLEASANTS, Associate Justice.—This suit was brought by appellee to recover damages for personal injuries alleged to have been caused by the negligence of appellant. Plaintiff's cause of action is thus stated in his petiton:

"The defendant had a depot at Lufkin, Texas, which, with its platform and waiting room, abutted on its line of railway. It was used by defendant as a place for passengers to get on and off its trains, and all persons who were lawfully at said depot were accustomed, and authorized by defendant, to pass over and along the platform, which was at a height of several feet from the ground at all points. That the depot was used as a place for passengers to await the arrival of trains, and the defendant was bound to keep the same in a safe condition, and to provide lights for the platform and approaches thereto at night, which it failed to do.

"That defendant cut a large hole in its platform prior to May 23, 1901, and on said date plaintiff was in the said town of Lufkin, and went to the said depot about 12 o'clock on the night of said date, where he purchased a ticket for the purpose of becoming a passenger on defendant's train from Lufkin to Nacogdoches, it being then only a short time before said train was due to arrive.

"That when he reached the station it was dark and raining, and the depot was only dimly lighted at one side and on one end, but on the other side and other end it was very dark, and was not lighted at all.

"That the train was late, and it became necessary for plaintiff to go to a remote part of defendant's platform, for the purpose of urinating, no place being prepared by defendant for the use of its passengers, and being unaware of danger, and free from fault or negligence, started to walk across the platform, and by reason of defendant's willful, careless, and negligent disregard of its duty in cutting a hole in its platform, and willfully, carelessly, and negligently leaving said hole in its platform, and willfully, carelessly and negligently failing and refusing to light its depot at the point where the hole was cut, and at both sides and ends, plaintiff stepped into said hole, and skinned his leg from the knee down, bruised and sprained his ankle, broke two of his ribs, and sustained serious and permanent internal injuries."

Defendant answered by general and special exceptions, general denial, and by special plea, the substance of which is as follows: "That if plaintiff was injured it was not through defendant's negligence, but on account of his own want of care, and as a result of negligence upon his part, in this: Notwithstanding the fact that defendant had used due care in providing safe approaches and lights for all that portion of its premises, depot platform, and waiting room, where passengers were reasonably expected to go, or where it was necessary for them to go, and

had used due care to keep the same in safe condition, yet plaintiff, without due care, went upon parts of defendant's premises which were not erected for the use of passengers, which plaintiff knew, or could have known by the exercise of ordinary care; but plaintiff, without light or guide, or precaution of any character, walked along the platform where passengers were not expected to go, and stepped, or fell, off of the same."

The exceptions were overruled, and a trial by jury in the court below resulted in a verdict and judgment in favor of plaintiff for $191. The evidence adduced by plaintiff on the trial of the case is as follows:

E. J. Mantooth testified for the plaintiff: "I reside at Lufkin, and am familiar with the depot. On the morning after plaintiff claims to have been injured, one of his attorneys called me up over the phone, and requested me to go to the depot at Lufkin and make an examination of the platform. I did so. I found a hole in the freight platform just north of the north end of the depot. It was cut out of some planks in the platform. The platform there was about ten feet long, north by south. The hole was made by cutting one of the planks in a slanting manner, so that the piece would fit back without falling through. The hole was about 12x18 inches, and about six inches from the end of the plank on the north end of the platform. A water pipe extended up from the ground to the hole, and the hole had evidently been left there in order to use the pipe and water in case of fire. The platform is about four feet from the ground, and is situated on the north end of the depot, between a side track and a spur track. The passenger departments and waiting rooms are on the south end of the depot. The ticket office and general office of the agent are between the freight department and the passenger departments of the depot. Tickets are sold on the south side of the agent's office, through windows opening into the waiting rooms. There are no urinals about the depot. The hole in the platform was open the next morning after Grubbs was injured. I have resided in Lufkin since the town was built, and have often taken passage at defendant's depot. I have never known passengers to use the portion of the depot platform on the north side of the depot where I found the hole. It could be used by passengers if they went up the steps at the northeast corner of the wareroom, and then around the building along the platform to the waiting room. This would be out of the way, and not the usual and customary way that passengers go. They either go up the steps at the southeast corner of the platform, or else step from the ground upon the platform at the ticket office, where the platform is low. I have never known the platform where plaintiff says he was hurt to be used for any other purpose than the handling of freight. The depot building is about ninety feet long. The place where plaintiff claims to have been hurt is about eighty feet from that part of the depot between the white waiting room and the southeast corner of the platform. The roof of the depot extends out over the platform. The

electric light lights up the entire eastern and southern side of the building. It gives ample light for the purpose of lighting the depot and platform, and the approaches necessary for passengers in going to and from the depot. The ground around the south end and eastern side of the depot is level. There is a light on the corner of the square southeast of the depot, across the street from it, and another southwest of the depot on the street. These lights, with the light at the depot, light up that portion of the street and the buildings sufficiently for any ordinary purpose."

The plaintiff testified: "On the 23d of last May I went from this place [Nacogdoches] to Lufkin, reaching there about 2:30 in the evening. I got through with my business that evening, and that night, near 12 o'clock, I went over to defendant's depot for the purpose of securing a ticket and taking passage back to Nacogdoches. Soon after reaching the depot I procured a ticket. There were some women and children in the waiting room, lying about on the floor. I suppose it was about midnight. The train was due at 1 o'clock a. m. As the depot was somewhat crowded, I went out on the platform, laid down on some trunks, and went partially to sleep. I was awakened by the porter moving the trunks, and lit my pipe and walked from the platform at the south end of the depot up on the platform on the east side, and feeling a call of nature, I turned to my left, or the west, around the north end of the depot. I noticed some kegs and boxes sitting next to the northeast corner of the depot, on the platform; found my way between these kegs and boxes and went in a westerly direction several steps, when suddenly and very unexpectedly I stepped into a hole in the platform, which caused me to fall, and I struck some hard substance on the ground. I wrenched my left ankle, skinned and bruised my left leg, broke two or three of my ribs, and received other injuries. I thought at the time it would prove fatal, and that I would die. I wanted to get word to my wife, and as soon as I could I got up and went around the depot on the west side, coming up to the platform on the south end, where I originally started. It was very dark, and I was very cautious in going around the north end where I fell. I was looking up at the time to see that I kept under the roof and out of the rain; it was misting rain at the time. I was also feeling along cautiously with my right foot to keep from stepping off the platform. It was my left foot that went into the hole. When I got back to the south end of the depot Mr. Watts suggested that we go and see where I fell. I went with him and Mr. Elder, and showed them where I fell. I showed either Mr. Watts or Mr. Elder the hole I stepped into. I am positive that I did. I have suffered not only directly from the breaking of my ribs, but also from other internal injuries. My respiration has not been good; my left hip has hurt me more or less. My side still hurts me, and my general health has not been good since I was hurt. I have not been able to work over half the time, and only a few days ago I had fever. I had Dr. Campbell, of Nacogdoches, treat me. I am not sure as to the

amount of my doctor's bill, but think it was sixteen or seventeen dollars. I have been at Lufkin a number of times during the past two or three years. The waiting room for white passengers is on the southeast corner, and that for colored on the southwest corner of defendant's depot. The ticket office is north of and next to the waiting rooms. The freight room is on the north end of the building, the ticket office being between the waiting room and the freight room. That portion of the platform on the south and east of the depot, and next to the waiting room, is I suppose about two feet from the ground; but in going north on the east side of the depot the platform makes the gradual rise until it reaches a height of about four feet. The place where I fell from is some sixty or seventy feet north from the door to the white waiting room. I knew that the south end of the depot was constructed for passengers, and that the 'higher or elevated part of the platform on the north was constructed for the handling of freight. I am positive I showed either Rev. Mr. Watts or Mr. Elder, the one that held the lantern, that I stepped into a hole. I never told anyone that I fell against the bumper posts. I had been on the north end of the platform several times before I was injured. I do not know that I had ever been on that particular part from which I fell, but while waiting there for trains I had, on several occasions, walked up and down the east edge of the platform that was used in handling freight. This was in the daytime, and each time they usually had freight boxes and things of that kind piled up along there. It was very dark and I could not see the hole, the edge of the platform, or anything of the kind. I went there to urinate. I am not sure how well the lantern next to the waiting room was lighted. I think it was dimly lighted, with an ordinary glass case. It gave no light on the north side where I fell."

Defendant established by uncontradicted evidence that the portion of its platform on which plaintiff received his injuries was about eighty feet distant from the waiting room of its depot, and was constructed and used solely for the purpose of handling freight, and was never used by passengers in alighting from or in getting on trains, nor in going to and from the passenger depot, and was not a place to which passengers or the public would naturally or ordinarily resort. The defendant had a closet for the use of passengers situated across its track from the passenger depot and about thirty or forty feet distant. There was no light at this closet but none was necessary, as the electric light on the corner of the waiting room and another at the shop about 150 feet west of the depot kept the way to the closet sufficiently lighted so that any person by ordinary observation would see it. Defendant's passenger trains stopped at the southwest corner of the platform to receive and discharge passengers. We think these facts wholly fail to show any negligence on the part of the defendant that would entitle plaintiff to recover for the injuries received by him. No duty devolved upon the defendant to keep that portion of its depot platform or grounds not intended for the use of passengers, and to which they would not ordina-

rily resort, lighted. Railway v. Barrett, 47 S. W. Rep., 1039; Rozwadosfskie v. Railway, 20 S. W. Rep., 872.

As to that portion of its platform which was used only for the purpose of handling freight and not intended for the use of passengers, the defendant was under no obligation to any person who had knowledge of the purpose for which the platform was used, to exercise ordinary care to keep the same in safe condition. This obligation rested upon defendant only as to its servants and to persons who might use said platform by its express or implied invitation. Dobbins v. Railway, 41 S. W. Rep., 62; Shearm. & Redf. on Neg., sec. 410. The plaintiff testifies that he knew the platform which he was hurt was constructed and used for the handling of freight. He had been at defendant's depot a number of times before he was injured and freight was usually piled on that portion of the platform. He had on several occasions while waiting for the train walked along the east edge of the platform, but does not remember that he was ever on that particular part from which he fell. There is nothing in the evidence from which consent or invitation by the defendant to use this platform by passengers can be implied, but on the contrary the evidence negatives any such consent or invitation. The defendant having violated no duty which it owed to the plaintiff, it is not liable for the injuries received by him, and the court below erred in refusing to instruct the jury to return a verdict for the defendant. Having reached the conclusion that there is no evidence in the record to sustain a verdict for the plaintiff, it becomes unnecessary for us to consider the remaining assignments of error. The evidence in the case, which is admitted by plaintiff to be true, shows that the defendant was not guilty of any negligence which caused or contributed to plaintiff's injury. The judgment of the court below is reversed and judgment is here rendered for the appellant.

*Reversed and rendered.*