J. H. Davis v. Houston East & West Texas Railway Company.

Decided April 25, 1902.

1.—Railway Company—Negligence—Unlighted Depot Grounds.

Plaintiff, while seeking to purchase a ticket, fell at night into a hole in the depot grounds 150 feet from the depot steps. See evidence held not to show the defendant company guilty of negligence in failing to keep its grounds lighted and in safe condition,—the place at which plaintiff was injured not being one to which passengers would naturally or ordinarily resort.

2.—Practice on Appeal—Harmless Error.

Where the undisputed evidence shows that plaintiff has no cause of action, errors in the charge and in the rulings of the court at the trial are immaterial.

Appeal from Montgomery. Tried below before Hon. L. B. Hightower.

*Brockman & Kahn* and *J. V. Meeks,* for appellant.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellee.

· PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellant against the appellee for the recovery of damages for personal injuries alleged to have been caused by the negligence of appellee. The negligence charged in the petition was the failure of appellee to have its passenger depot platform approaches and contiguous grounds in the city of Houston properly lighted, and in having and maintaining upon its depot grounds a dangerous hole or excavation into which appellant fell and was thereby injured as complained of in the petition. The petition alleged that appellant applied at appellee's passenger depot in the city of Houston for a ticket for the purpose of becoming a passenger upon a passenger train of appellee leaving Houston about 7 o'clock a. m. on February 19, 1901, and was directed by appellant's agent to whom he applied to go to another of appellee's depots about 100 feet distant from said passenger depot; that said agent did not warn appellant of the existence of said hole, and that in going across appellee's grounds from one depot to the other he fell into the hole and was injured as alleged.

The answer of appellee contained general and special exceptions, general denial, plea of contributory negligence, and a special plea in which it is averred that if any person directed plaintiff to go across its grounds as alleged such person was not the agent of appellee. Appellant by supplemental petition excepted to the plea of contributory negligence contained in appellee's answer and denied all of the allegations of said answer. The court below overruled all exceptions to the pleadings and a trial of the cause by a jury resulted in a verdict and judgment for the defendant, from which judgment the plaintiff below prosecutes this appeal. The evidence adduced on the trial is succinctly stated as follows:

Appellant was a deputy sheriff of Montgomery County, and having process for parties who resided at Humble, in Harris County, left Conroe about 3 o'clock a. m. on the morning of February 19, 1901, to go to Humble for the purpose of serving said process. He was accompanied by J. H. Duke. They came to Houston over the International & Great Northern Railway and arrived at the Houston depot of that road at 4:30 a. m. They walked from the International & Great Northern depot to Main street, where they procured a carriage and were driven to the passenger depot of the appellee. When they reached appellee's passenger depot the ticket office was not open and there was no light except in the train dispatcher's office, up stairs over the ticket office. They went up stairs and found a man in the dispatcher's office of whom they inquired for the ticket agent. He told them that was not the place to buy a ticket, and directed them to go to the freight depot on the opposite side of appellee's yard. It was dark and there were no lights in the depot yard. In crossing from the passenger to the freight depot they came in contact with a train of cars on a side track which ran between the two depots, and in order to get around the cars they turned to the right and followed the track on which the cars stood. When they reached the end of the train the appellant, who was walking ahead, fell

into a large excavation or gully which ran across the southwest corner of the depot yard. Duke assisted him out of the hole and they went on to the freight depot, and finding no one there returned to the passenger depot, where they procured a ticket and pursued their journey to Humble.

The hole into which appellant fell is 150 feet south from the nearest steps of the passenger depot and about the same distance southwest from the freight depot. The freight and passenger depots are about 120 feet distant from each other. The corner of the yards through which the excavation extended is occupied by the Calhoun Fuel Company as a wood yard, the office of the said company being situate on the northeast side of the excavation and between it and the passenger depot. There are wood tracks there and a vacant place for unloading wood. Appellee's depot yard is bounded on the south by Wood street and on the west by Walnut street. There is a high fence along the north line of the yard. The passenger depot is in the northwest corner of the yard. Between the depot and the fence there is a brick pavement, and at the west end of the depot adjoining Walnut street there is a cab stand where passengers are received and deposited by vehicles which carry them to and from the city to the depot. In going from the city to the depot in a carriage or other conveyance the route is along San Jacinto street to Wood street, along Wood to Walnut, and along Walnut to the cab stand at the west of the passenger depot. This was the route by which appellant was carried to the depot, and he was deposited on the brick pavement before mentioned which runs along the north side of the depot. Persons going to the depot from the city on foot usually go through the yard of the Houston and Texas Central Railway Company, and pass by the southwest corner of appellee's yard. Anyone following this route would pass within eighteen inches or two feet of the hole into which appellant fell. This hole is oblong in shape, being about 70 feet in one direction and about 40 feet in the other, and some 12 or 15 feet in depth. It is an old gully and is crossed by several railroads, and has only been partially filled up. Appellee's passenger trains receive and discharge passengers at the southeast corner of the passenger depot.

There is a brick platfrom adjoining the track on which the train comes into the depot, and passengers going from the train pass the east end of the depot on to the pavement before mentioned and down this pavement to Walnut street. The platform approaches and grounds around the passenger depot were in good condition. Appellee's station agent was not at the depot before 8 o'clock on the morning of the accident. The night clerk in the freight depot sold the tickets to the passengers on the train on which appellant took passage. He testified that he sold appellant a ticket to Humble between 6 and 6:30 a. m. The schedule time for the train to leave Houston on the morning in question was 6:50 a. m. He went to the ticket office between 6 and 6:30, and appellant came to the window and purchased the ticket. He had not seen appellant prior to this time. When he purchased the ticket appellant was cursing

and complaining of having fallen into the hole. When this witness went to the depot it was lighted and there was a fire in the waiting room. Appellant's train dispatcher testified that he directed no one to go to the freight depot to purchase a ticket on the morning in question; that he was in his office during all the night of February 18, and does not remember anyone coming into his office and asking for a ticket; that he knows that he directed no one to go to the freight depot to purchase a ticket, because he knew the ticket office was in the passenger depot, the same building in which his office was situated; and that he saw no one on that morning who claimed to have fallen into a hole.

The appellant testified that the person who sold him the ticket (the night clerk) looked like the same person who directed him to the freight depot; that he would not swear that he was the same person, but to the best of his knowledge he was. The witness Duke testified that when appellant purchased his ticket he said to the person who sold it to him, "You came very near getting me killed," and the person addressed made no reply. The testimony as to whether or not appellant reached appellee's depot and fell into the hole more than an hour before appellee's train was due to leave the depot is conflicting. He reached Houston at 4:30 and walked from the International & Great Northern depot to Main street, a distant of about a mile. Duke testified it took from twenty-five to thirty minutes to walk this distance; that they remained on Main street five minutes before they got a hack; that it took them five or ten minutes to drive from Main street to appellee's depot, and that appellant fell into the hole about fifty minutes after leaving the International & Great Northern depot, and about thirty minutes before appellee's train left. Appellant testified that it took between a half and three-quarters of an hour to go from the International & Great Northern depot to Main street; that he supposed it was about one hour and forty minutes after leaving the International & Great Northern depot that he fell into the hole. The hack driver who carried them to the depot says that it took about ten minutes to drive from Main street to appellee's depot and that he arrived there about thirty minutes before the time for the train to leave, but he also testified that he thought the train left at 6 o'clock. All the witnesses testify that the train left Houston at 6:50, and that this was the schelude time for it to depart. There is testimony to the effect that appellant was very drunk the night before he reached Houston, was drunk at the time he received his injuries, and has been drunk very often since.

We deem it unnecessary to discuss the questions raised by appellant's various assignments of error at length, because in our opinion he has wholly failed to show any negligence on the part of appellee which would entitle him to recover for the injuries received by him. The assignments predicate error upon the refusal of the trial court to sustain appellant's exception to appellee's plea of contributory negligence, upon the admission in evidence over appellant's objection of the testimony that appellant was intoxicated at the time of the accident, upon the

refusal of the court to permit appellant to show by the hack driver that he carried appellant to appellee's depot at the time that passengers usually went to said depot, and upon certain paragraphs of the court's charge.

Conceding that all the assignments show error, under our view of the legal effect of the undisputed facts in the case no other verdict than one in favor of appellee could have been properly rendered, and the errors complained of were therefore harmless. In order to show actionable negligence on the part of appellee the evidence must show that by some act or omission on its part it has violated a duty which it owed to the appellant. This, we think, the evidence fails to show. The duty charged in the petition to have been violated by the appellee was the duty to keep its grounds properly lighted and in a safe condition. While it was the duty of appellee to keep its depot, approaches, and grounds connected therewith which were likely to be visited by passengers or persons lawfully upon its premises properly lighted for one hour before the departure of its trains, no such duty devolved upon it as to that portion of its grounds not intended for the use of passengers and to which they would not reasonably be expected to resort.

We think it conclusively appears from the uncontradicted evidence that the place at which appellant was injured was not intended for the use of passengers, and was not a place to which passengers would naturally or ordinarily resort, and consequently no duty devolved upon appellee to keep such place lighted. Railway v. Barnett, 47 S. W. Rep., 1039; Railway v. Grubbs, 4 Texas Ct. Rep., 581; Razwadosfskie v. Railway, 20 S. W. Rep., 872.

The duty of appellee to keep its grounds in a reasonably safe condition was a duty which it owed only to its employes and to persons who might be upon its premises by its express or implied invitation. Dobbes v. Railway, 41 S. W. Rep., 62; Shearm. & Redf. on Neg., sec. 410; Railway v. Grubbs, 4 Texas Ct. Rep., 581.

Appellant could not have been misled by appearances into believing that the place at which he was injured was intended for the use of passengers, and there is nothing in the circumstances established by the evidence from which any implied invitation to appellant to go upon said premises can be found, and we think the evidence equally insufficient to show an express invitation.

Conceding, for the sake of argument, that if appellant was directed by an employe of appellee to go from the passenger depot to the freight depot to purchase his ticket, and that in following such direction he, without any negligence on his part, fell into the hole and was injured as alleged, that he would be entitled to recover because of the failure of such employe or agent of the appellee to warn him of the existence of the hole, no such case is made by the evidence. Neither the appellant nor his witness Duke could identify the person who they say directed them to the freight depot. Appellant says that he will not swear that the night clerk who sold him the ticket was the person who directed him

to go to the freight depot, though to the best of his knowledge he was. The night clerk and the train dispatcher, the only two employes of appellee who were shown to be at or about the depot at the time appellant reached there, both swear positively that they did not direct the appellant to go to the freight depot, and their statements are strongly corroborated by the fact that they both knew where the ticket office was and that tickets were not sold at the freight office. As against this testimony, the mere opinion of the appellant that the night clerk was the person who directed him to go to the freight depot would not sustain a finding by the jury that such was the fact. Appellant's contention that he was directed to go across appellee's grounds by one of its agents or employes being unsupported by any evidence legally sufficient to sustain it, his right of action, if any he had based upon such contention, must fall.

The case as presented by the pleadings and evidence is in no way affected by the fact that the hole into which appellant fell was near a public highway, or a path usually used by a person in going to or from appellee's depot. Appellant was not injured while traveling said highway or path, and the negligence of appellee, if such negligence is shown by the evidence, in maintaining the hole in proximity to said path or highway was not the proximate cause of appellant's injury. Simonton v. Light and Power Co., 4 Texas Ct. Rep., 584; Gay v. Railway, 139 Mass., 437.

Appellant had reached the passenger depot in safety, and he would not have been injured had he remained at the depot or in that portion of appellee's yard intended for the use of passengers and to which passengers would ordinarily resort. He chose not to do this, but went off into a distant part of the yard not intended for the use of passengers, and where appellee could not reasonably expect its passengers to go, and while so using appellee's premises without its consent or invitation, either express or implied, fell into the hole and received the injuries complained of.

Our conclusion being that the evidence fails to show the violation of any duty which appellee owed to the appellant, he has shown no cause of action, and the questions as to whether or not he was intoxicated at the time he was injured, and as to whether appellee's depot was properly lighted for the length of time required by law before the departure of its train, become immaterial. As before stated, any error in the charge of the court is also immaterial, because under the undisputed evidence in the case no other verdict than one in favor of appellee could have been properly rendered.

The judgment of the court below is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

Appellant in his motion for a rehearing complains that the finding of this court in our opinion filed in this case on April 25th, "that the hole into which appellant fell was 150 feet from the nearest steps of the passenger depot," is not supported by any evidence in the record. The only witness who testifies as to the distance from the hole to the depot says: "From the center of the hole to the nearest steps of the passenger depot is 150 feet." This witness also says that on a direct line from the passenger to the freight depot the nearest you could come to said hole would be 95 feet, but he nowhere says, as contended by appellant, that the hole was within 95 feet of the passenger depot. The map prepared by this witness shows that the distance to the edge of the hole from the nearest portion of the passenger depot is 130 feet. As the proximity of the edge and not the center of the hole is the material issue in so far as the question of distance is material to appellant's case, we will correct our finding so as to conform to the map, which, as before stated, shows this distance to be 130 feet.

We adhere to the views expressed in our former opinion as to the law of this case, and with the modification in our finding of fact above indicated the motion for rehearing is overruled.

*Overruled.*