**FORT WORTH & D. C. RY. CO. v. ARMITAGE.**

**No. 3603.**

Court of Civil Appeals of Texas. Amarillo.
May 6, 1931.

Rehearing Denied June 3, 1931.

W. W. Gibson and Morgan, Culton, Morgan & Britain, all of Amarillo, and Thompson & Barwise, of Fort Worth, for appellant.

E. O. Northcutt and H. D. Bishop, both of Amarillo, for appellee.

HALL, C. J.

This is an action to recover damages for personal injuries instituted by appellee Armitage against the defendant railway company.

It appears that the appellee came to Amarillo seeking employment. That his occupation was that of hoisting engineer, and after remaining in Amarillo a day or two, he decided to go either to Denver or Chicago. He purchased a ticket to Dalhart, Tex., intending to leave Amarillo on the night of March 21st, on a west-bound passenger train which left at 9:15 p. m. Entering the station some time before the departure of his train, he purchased his ticket, bought a Denver paper, and was reading it when the train arrived. According to his testimony he did not hear the train arrive, but heard the station man call, "All aboard for the train north." After hearing this call he went into the toilet and heard the station man again call, "All aboard train north." He then hurriedly left the depot to get on the train, negligently leaving his overcoat in the toilet. He testified that he got on the train between the first two passenger cars, one of the vestibules of which was open. He looked into the second car and saw that the seats were practically all taken. He then turned to the left and went into the smoker, taking the first seat on his right as he went in. That he then realized he did not have his overcoat and got up at once and went out on the car platform and saw that the doors next to the depot were closed; that a door on the opposite side of the train was open. He saw none of the crew, so he stepped off of the train at this north door. The train was moving. There were no lights between the tracks on the north side and he stepped off in the dark. That his left foot became tangled in certain rubber hose laying by the side of the track which had been used in servicing the cars, filling the water tanks with water.

The acts of negligence alleged are: (a) In leaving the north door of the train open, unguarded, and unattended; (b) in leaving the rubber hose next to the track; (c) in violating a rule of the company by leaving the side door and trap door of the vestibule open while the train was in motion; and (d) in failing to light the premises on the north side of the train.

In addition to demurrer, exceptions, and a general denial, defendant pleaded in substance: (a) That the injury was due to the failure of plaintiff to exercise care for his

own safety, in that he attempted to alight from a moving train at night on the wrong side; (b) his attempt to so alight without looking to see if there were any objects near the track to cause him to stumble; (c) that in so attempting to alight, plaintiff repudiated his contract obligation and abandoned the obligations imposed upon him to continue his journey to Dalhart, and thereby released defendant from its contract obligation and himself prevented defendant from performing its contract and obligation and thereby assumed the risk of his own voluntary act in so disembarking; (d) that plaintiff was not injured because of any violation by defendant of any duty it owed to him under such contract, because by attempting to alight before reaching his destination, without invitation or knowledge on the part of the defendant and at a point and place not contemplated by the contract, he released defendant from the obligations it owed to him under said contract.

The court submitted the case to the jury upon special issues, which, with the answers, are as follows:

1. (a) Did the defendant Fort Worth & Denver City Railway Company leave a hose at the place where the plaintiff, A. W. Armitage, got off the train in question? Answered: "Yes."

(b) If so, was the leaving of said hose at said place negligence on the part of the defendant, under the circumstances, as the term "negligence" has been defined in this charge? Answered: "Yes."

(c) Was such negligence, if any, the proximate cause of any injury to the plaintiff? Answered: "Yes."

2. (a) Was the act of the plaintiff in alighting from the train in question, at the time and place and under the circumstances existing at the time he alighted therefrom, negligence upon the part of the plaintiff as the term "negligence" has been defined in this charge? Answered: "No."

3. Was the injury received by the plaintiff upon the occasion in question the result of an accident? Answered: "No."

4. What amount of money, if paid now, would reasonably compensate plaintiff for the injuries, if any, sustained by him as the proximate result of the negligence, if any, upon the part of the defendant? Answered: "$8,000.00."

Special issue No. 1 requested by defendant: Did plaintiff, at the time he disembarked from defendant's train, do so with the expectation of not continuing the journey on the train but continuing his journey on a subsequent train? Answered: "No."

The material facts upon which this action is based are practically undisputed. The plaintiff testified that he was 49 years of age and, when able to secure work, his average monthly wage was about $230. That he had not been employed for many months and had been traveling over the country seeking work. That his last employment was at St. Petersburg, Fla. That he left there intending to go to Boulder Dam but, upon reaching El Paso, ascertained that work was not available at Boulder. That he then came to Amarillo, traveling on trucks and automobiles which picked him up along the road. That he reached Amarillo on the night of March 20th, and on the morning of the 21st endeavored to find work. Being unable to do so, he decided to go either to Denver or Chicago. He intended to go to Dalhart and make up his mind there whether he would go to Denver or Chicago. That about 5 o'clock in the afternoon he went to the defendant's depot to inquire about the movement of trains and learned that a train would leave about 9:15 that night. That he went back uptown and later returned to the station close to 9:15. After he returned he sat down in the depot, then bought his ticket to Dalhart and a Denver paper, and, as heretofore stated, he did not hear the train when it arrived, but heard the calls. That after forgetting his overcoat he went to the opening on the south side of the train next to the depot, exhibited his ticket to the company's employee, who waved him onto the train. That he did not remember whether he got on to the smoker vestibule or the vestibule of the chair car. That the train was so arranged that the smoker was on the west or left-hand side and the chair car on the east of the entrance. That after getting on board he sat down and commenced to read his paper, and just as the train started to move, realizing that he did not have his overcoat, he got up at once and went on the car platform and saw that the doors next to the depot were closed. That a door on the right-hand side of the train, or north side, was open. That he saw none of the crew there and he disembarked at this north door. He saw that the train was moving but intended to get his coat. That he went down the steps and glanced at the ground and so far as he could see it was in a smooth condition. While there were no lights between the tracks, since he saw nothing to prevent it, he got off the step. That just as his left foot was coming, he got tangled up in the rubber hose which was alongside of the train and stumbled. This threw him under the train, which passed over both his feet, so that both legs had to be amputated just below his knees. He testified that there was plenty of light on the depot side or south side of the train where he embarked. That he knew the doors of the train were closed on the depot side, and he further knew the train was gradually increasing its speed. He also knew that he was not getting off on the depot side and that it was dark on the north side. He further testified that the hose he stepped on was not by the

car door at the place where the train had been stopped while it was waiting to take on passengers, but was laying on the ground a car or a car and a half length farther west toward the head of the train, and that very likely it would have been about the baggage car before the train started. He testified that immediately adjoining the depot there was a brick platform and beyond it the house tracks or station tracks. That he boarded the train by stepping from the brick platform onto the train which was on the first track. He testified that he had had about fifteen years' experience in railroading and knew how to get off of a train. That just before alighting he reversed his position to get off, that he turned around and backed down the steps and put his right hand on the left handle and his left hand on the right handle, and then let go with his right hand as he stepped out on the ground, which would throw him facing the train, but that he still held with his left hand. That just as he let go with his left foot and before he ever turned loose his hold with his left hand, he became entangled in a rubber hose and was tripped and thrown under the train and injured. He further testified that at the time he got off the train was not going more than three miles an hour.

The testimony of J. W. Mode, defendant's division superintendent, was to the effect that the grounds on the north side of the train where plaintiff disembarked had never to his knowledge been used by passengers, either in getting on or off the trains. By his testimony he showed that it was necessary to have the doors on the north side open at Amarillo so that the trainmen and yardmen could properly service the train by putting water and ice into the coaches.

It will be seen that the only act of negligence on the part of the defendant which the court submitted was in leaving the hose at the point where it was when the plaintiff stepped onto it.

The appellant first contends that the court erred in refusing to direct a verdict for the defendant railway company.

In this connection, appellant contends that plaintiff having purchased a ticket from Amarillo to Dalhart and having entered defendant's train for the purpose of going to his destination, defendant had only one obligation to perform and that was to safely transport plaintiff to his destination, and there being no evidence which tended to show that any passenger had ever made use of that portion of the right of way on which plaintiff disembarked or that there was any reason or excuse for passengers on said train to make use of such portion of said right of way for any purpose, the defendant owed plaintiff no duty to keep that portion of its right of way in any particular condition. That in the absence of a duty there could, of necessity, be no negligence and defendant insists that a peremptory charge should have been given for the further reason that when defendant was attempting to comply with its contract to transport plaintiff to Dalhart, plaintiff was guilty of contributory negligence, when, of his own volition, without notice to defendant, he abandoned his contract, placing himself in a position inconsistent with that of a passenger by attempting to disembark before reaching his destination in a manner and at a place not ordinarily used by passengers, and in his effort to disembark from such train and abandon it for the purpose of getting his overcoat, he was at most only a licensee toward whom the defendant owed no duty to keep that portion of its grounds used by its employees exclusively, in any character of condition. That the court further erred in refusing to peremptorily instruct the jury because the evidence fails to show that any duty rested upon defendant, toward a passenger destined to Dalhart, to have its premises north of the train in proper condition for alighting passengers, and for the further reason that the evidence does not raise the issue that the defendant should have reasonably anticipated that a passenger holding a ticket for a point (north) west would, after taking a seat on the train, change his mind and disembark in the dark on the wrong side of the train after it had started on its journey and without making his purpose to disembark known to any of the employees. A further contention is that because plaintiff admitted that he knew he was disembarking on the opposite side of the train from the regular side of entrance and knew that the doors on the south side, prepared for passengers to get on and off, had been closed, and knew that the defendant did not expect passengers to then get on or off its train, and that by his own testimony he shows that he was guilty of contributory negligence, which was, as a matter of law, the proximate cause of his injuries.

The first contention of appellant which we will consider is that when Armitage decided to leave the train for the purpose of getting his overcoat, he left with the intention of resuming his journey upon another train and for the time the contract of carriage had been abandoned and the relation of carrier and passenger no longer existed, citing 8 Tex. Jur. 612, § 433, and authorities. The contention is that the facts in evidence show that the relation of carrier and passenger no longer existed after he fully decided to abandon his journey, notwithstanding his testimony to the effect that his intention was to again get on that train if he had time after getting his overcoat.

It must be admitted that the record tends to show that his intention to resume his journey on that train is an afterthought. He had

admitted that he knew Amarillo was a division point where the train was serviced and that when he arose to leave the car he saw that the train was moving. The facts show that it was a long train, containing about half a dozen cars, and at the time he decided to leave, the train was gradually increasing its speed. He was in the smoking car near the front end of the train. He testified: "I knew that it was gradually increasing its speed and I knew I was going to have to get off pretty quick if I got off. As to my expecting to get off on the north side of the train and wait until that long train had passed and then go and get my overcoat and then come back and catch the train, I hadn't thought anything about getting around that train. I did not think anything about waiting there until the train had passed and then going and getting my overcoat and then coming out and catching the train. The only thing I did was the action of getting off. I knew that I was not getting off on the depot side."

It was shown that he had alleged in a former suit as follows: "Upon noticing that none of the employees of the defendant were present and that all of the doors had been closed and that said train was moving and had started on its destination from Amarillo, Texas, to Dalhart, Texas." And had further alleged in three other petitions filed in the former suit: "That said train was moving very slowly and had started on its destination from Amarillo, Texas, to Dalhart, Texas." Notwithstanding these allegations, his supplemental petition filed in this suit October 10, 1930, alleges that: "He had no knowledge that said train was then leaving Amarillo or on its way to Dalhart, Texas."

It was further shown that shortly after the accident, in a written statement made to the defendant's claim agent, he said: "I decided I had better get off and get it (my overcoat) as I knew my ticket would be good the next day. * * * I had the overcoat on my mind and the train was moving and I knew if I got off, I would have to hurry. I was not worrying about getting back on this train, as I knew I would only be out a night's lodging and I needed my overcoat badly."

It must be admitted that the plaintiff voluntarily alighted from the train on the wrong side without informing any of the defendant's employees of his intention to do so, and that he alighted at an unusual place in an unexpected manner and at a time when the defendant could not have reasonably anticipated that a passenger holding a ticket entitling him to transportation to a distant station would disembark. In thus disembarking, we strongly incline to the opinion that his conduct made him a licensee and probably a trespasser when he got off in a part of the defendant's yards not used or intended to be used by passengers, either in embarking or disembarking. While we think that there is merit in appellant's contention, we do not base our disposition of the case upon that theory.

■■ We cannot assent to the contention of the appellee that the evidence sustains the finding of the jury to the effect that the railway company was negligent in leaving the hose at the place where the plaintiff jumped off of the train. It conclusively appears that the place at which appellant was injured was not intended for the use of passengers, and it further appears that it was not a place at which passengers would naturally alight or where they expected to disembark at that time, and the defendant therefore owed plaintiff no duty to remove the hose, especially after the train had left the depot. Ordinarily it is the duty of a railway company to keep its grounds in a reasonably safe condition, and it must use more than ordinary care in keeping that portion of its depot grounds designed for the use of passengers in a safe condition; but as to such portions of its depot premises which are to be used by its employees only in the performance of their duties and at division points in servicing trains we know of no authority which requires a railway company to remove the hose used in furnishing water for its cars immediately upon the cessation of such use. If it be admitted that it owed this duty to its employees, we think the trend of decisions in this state is that it was not required to remove the hose in the performance of any duty toward Armitage or any other passenger. Ratteree v. Galveston, H. & S. A. Ry. Co., 36 Tex. Civ. App. 197, 81 S. W. 566; Davis v. Houston, E. & W. T. Ry. Co., 29 Tex. Civ. App. 42, 68 S. W. 733; Fort Worth & D. C. Ry. Co. v. Allen (Tex. Civ. App.) 179 S. W. 62; Houston, E. & W. T. Ry. Co. v. Grubbs, 28 Tex. Civ. App. 367, 67 S. W. 519; 8 Tex. Jur. 749, 819.

■■ The plaintiff testified that when he went to the depot at about 5 o'clock in the afternoon to inquire concerning the departure of trains, he spent some time there looking over the grounds and saw the situation and conditions as they existed. He further testified that he knew that the platform on the south side of the train was well lighted and that the north side was dark. Under such conditions he must be held to have taken the dark side as he found it, and the company certainly owed no duty to light that side of its grounds for him. Missouri, K. & T. Ry. Co. v. Criswell, 101 Tex. 399, 108 S. W. 806. He admitted that he was familiar with the operation of several kinds of vestibule doors, yet he did not attempt to make any explanation of why he did not open the vestibule door on the south side and get off there rather than on the north side where it was dark. It cannot reasonably be claimed that the open

112

door on the north side was an invitation for any passenger who had just embarked for a distant station to use it in alighting from the train which had started on its journey and moved about one hundred feet and was gradually increasing its speed, and especially when the doors on the depot side had been closed, all indicating to passengers inside, as well as those on the outside, that the time for ingress or egress had ended.

■■■■ We find ourselves unable to approve the finding of the jury that the act of defendant in leaving the hose on the ground where the plaintiff alighted was the proximate cause of his injuries. With reference to this feature of the case, the evidence is undisputed. Through his act in not leaving the depot when his train was called, and in going to the toilet, and his further negligence in leaving his overcoat there, forgetting it, and boarding the train, he may be subject to the charge of contributory negligence, or at least these facts are in no degree chargeable to the defendant. To be the proximate cause, the injury must be the natural and probable consequence of the act complained of and of that character which should reasonably have been foreseen as such a consequence in the light of attending circumstances. Eames v. T. & N. O. Ry. Co., 63 Tex. 660; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Steed v. Gulf C. & S. F. Ry. Co. (Tex. Com. App.) 231 S. W. 714, Id. (Tex. Civ. App.) 209 S. W. 772; Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S. W. 390.

These and other cases hold that foreseeableness is a necessary element of proximate cause. Linn Motor Co. v. Wilson (Tex. Civ. App.) 14 S.W.(2d) 867; Blanch v. Villiva (Tex. Civ. App.) 22 S.W.(2d) 490. The defendant could not, by the exercise of reasonable care, have foreseen that a passenger destined for a distant station would board the train, leaving his belongings in the depot, or that he would attempt to alight from the train on the wrong side in the dark after it had started on its journey, nor can we assent to the contention that even though it be admitted its act in leaving the hose where it was when the train started is negligence in any sense, that it could have foreseen that any one would alight at that particular place. We incline to the opinion that the acts of plaintiff constitute an intervening cause for which plaintiff alone is responsible and which exclude the idea that the presence of the hose where it was was the proximate cause of his injuries.

■■ We have not undertaken to discuss the numerous propositions urged in detail, but are convinced, after a careful review of the undisputed testimony, that the verdict is not supported by the testimony. We are not authorized to set aside a finding of the jury and substitute our own findings and render a judgment for the defendant, but we sustain the contention of the appellant that the trial judge should have directed a verdict for defendant upon the evidence disclosed by the record.

For this reason we reverse the judgment and remand the cause for another trial.