HENRY C. LAUB, Respondent, v. CHICAGO, BUR-
LINGTON & QUINCY RAILWAY COMPANY,
Appellant.

**Kansas City Court of Appeals, May 7, 1906.**

1. **PASSENGER CARRIERS: Directions to Alight: Evidence:
   Hearing: Jury.** The question whether the carrier gave the
   passenger a certain notice about stopping a train at a sta-
   tion and an eating house, where the passenger, though some-
   thing hard of hearing, denies such notice, is for the jury, as
   is also the question of how the passenger—an old man—under
   the circumstances, had reason to interpret the information; and
   likewise the question of the sufficiency of lights about the
   carrier's station.

2. ———: ———: ———: **Proximate Cause: Jury.** Upon a review
   of the evidence it is held that the misdirection as to the stop-
   page of a train is the sole producing cause of the plaintiff's in-
   jury; and his subsequent conduct goes merely to the question
   of contributory negligence under the circumstances.

3. ———: **Passenger's Duty: Information: Instruction.** An in-
   struction based upon plaintiff's knowledge that the train would
   make a certain stop when the petition complains of the mis-
   direction in giving him such information, is held to be vicious,
   since he would be guilty of contributory negligence if with
   such information he acted as the instruction hypothecates.

4. ———: **Carrier's Duty: Passenger's Right.** A passenger when
   invited may leave a train at meal stations, and if he choose,
   walk to and fro for exercise, and if injured by negligent defect
   in the place, the carrier will be liable; but ordinarily the pas-
   senger's place is in the car and his right to leave the train is an
   exception to the general rule.

5. ———: ———: ———: **Action.** If the passenger leaves the
   train by the negligent direction of the carrier, and while using
   care is injured, the carrier is liable, regardless of other negli-
   gent causes co-operating to produce the injury, but if, without
   misdirection, a passenger leaves the train, knowing it would
   pull on to the eating house near, his negligence in so doing
   will preclude his recovery for such happening.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A.
Mosman,* Judge.

REVERSED AND REMANDED.

*Culver & Phillip* for appellant.

(1) The court erred in refusing the demurrer asked at the close of plaintiff's evidence and at the close of the entire testimony. (2) The demurrer should have been given because the fact, if it be a fact, that the plaintiff was induced to leave the train at Langdon by the erroneous announcement of the brakeman was not the proximate cause of the injury. 21 Amer. & Eng. Enc. of Law, 485, 492, cases collated; Henry v. Railway, 76 Mo. 288. (3) Not only the overwhelming testimony, but the conceded physical facts show that the plaintiff's injury was the result of his own negligence. Payne v. Railway, 136 Mo. 575; Lien v. Railway, 79 Mo. App. 475; Kelsey v. Railway, 129 Mo. 362; State v. Deltmer, 124 Mo. 435; Hayden v. Railway, 124 Mo. 566; Lane v. Railway, 136 Mo. 4; Champagne v. Hammy, 189 Mo. 109. (4) The court erred in giving plaintiff's instruction numbered 1. Railway v. Foreman, 73 Tex. 314; Deay v. Railway, 41 Minn. 184; Johnson v. Railway, 125 Mass. 75; State v. Railway, 58 Maine 176; Gunderman v. Railway, 58 Mo. App. 370; Redigan v. Railway, 155 Mass. 44; Burbank v. Railway, 11 L. R. A. 720; Woolwine v. Railway, 36 W. Va. 329; Railway v. Fairborn, 18 Ark. 491; Gillies v. Railway, 59 Pa. 129; Post v. Railway, 23 S. W. 708.

*Eastin, Corby & Eastin* for respondent.

(1) The demurrer to the evidence was properly overruled. (2) Two well-settled propositions of law are advanced by the respondent as the grounds upon which he should recover in this case. 1. It was the duty of defendant to properly advise the plaintiff as to the location of the restaurant, and if by a failure to perform that duty, plaintiff was injured he has his action. 2. It was the duty of the defendant to exercise ordinary

care to have all portions of its station grounds to which its passengers would be likely to resort or go upon, in a reasonably safe condition, and if it failed in this and plaintiff was injured by reason thereof, he has his action. Wilburn v. Railway, 36 Mo. App. 203; Adams v. Railway, 100 Mo. 555; Winkler v. Railway, 21 Mo. App. 99; Evans v. Railway, 11 Mo. App. 463; Railroad v. Lucas, 119 Ind. 583, 6 L. R. A. 193; 6 L. R. A. 193, n.; Railroad v. Sue, 25 Neb. 772; Reed v. Axtell, 84 Va. 231; Railroad v. Thompson, 76 Ga. 770; Green v. Railroad, 36 Fed. 66; Fordgee v. Merrill, 49 Ark. 277; Grimes v. Railroad, 36 Fed. Rep. 72.    (3)    A passenger is not obliged to remain on the train during the entire trip, but may temporarily alight therefrom at intermediate points, for the time the train remains there, for any purpose not inconsistent with his character as a passenger.   Railroad v. Overfield, 47 S. W. (Tex.) 684; State v. Railway, 50 Me. 176, 4 Am. Rep. 259; Railway v. Riley, 39 Ind. 568; Ormond v. Hughes, 60 Tex. 180; Parsons v. Railway, 113 N. Y. 358; Clussman v. Railway, 9 Hun. 618; Dodge v. Boston, S. S. Co., 148 Mass. 207; Haebrik v. Carr, 29 Fed. 298.

JOHNSON, J.—Plaintiff claims that while a passenger upon one of defendant's passenger trains he was induced to leave the train by a negligent direction given him by defendant and sustained injuries in consequence thereof.    He recovered judgment in the sum of $1,500 and defendant appeals.

Defendant argues that its request for an instruction in the nature of a demurrer to the evidence should have been sustained for two reasons; First, because the evidence adduced by plaintiff disclosed no negligent act of defendant that was or could have been the proximate cause of the injury; and second, plaintiff himself was guilty in law of negligence that directly contributed to his injury.

On January 18, 1904, plaintiff, a man eighty years old, became a passenger for hire on one of defendant's trains. His journey began at Council Bluffs, Iowa, and St. Louis was his destination. The train left Council Bluffs at about five o'clock in the afternoon and its equipment for passengers consisted of a smoking car, chair car, and sleeping car. Plaintiff occupied a seat in the chair car and was safely carried until the station of Langdon was reached. The train made two stops at this point, first at the station provided for the reception and discharge of passengers and then some three hundred feet forward at a restaurant where supper was served for the refreshment of the passengers who desired it. The first stop consumed about two minutes; the second twenty minutes. While the train was enroute to Langdon a brakeman ascertained the number of passengers who desired supper there. He asked plaintiff if he (plaintiff) would take "supper at Langdon" and received a negative answer. When the approach to the station at Langdon was signalled, the brakeman passed through the car calling out (according to the version of plaintiff), "Langdon, twenty minutes for supper." When the train made the first stop, ten or twelve passengers left the chair car as plaintiff supposed for the restaurant, but in fact they had reached the end of their journey on that train. The influence of example created a desire in plaintiff for refreshment and caused him to act upon the belated purpose to satisfy his desire. Accordingly, he was the last one to leave the car and when he alighted on the platform he looked around in vain for the restaurant. While so engaged, the train proceeded to the restaurant platform, the disentrained passengers went their various ways and plaintiff found himself alone and bewildered. He had never traveled over this road before and became confused in the situation in which he was placed. It was then about 7:30 o'clock in the evening. Plaintiff says there were no lights in or about the station building and that "it was

as dark as midnight on the Missouri bottoms." His physical surroundings may be thus described. The platform, on which he stood, was immediately west of the main track, which runs north and south; three hundred feet south was the restaurant platform on the east side of the track. Across the track from where he stood was another platform owned and used by a connecting carrier that operated a railroad eleven miles long between Langdon and Rockport. Directly east of this platform was the main track of this road, which also ran north and south, and on this track stood a train on the point of departure, consisting of a small engine and one antiquated passenger coach that was "illuminated" by four lanterns. The engine carried a headlight that threw its beams towards the south. So placed, plaintiff says he heard a "voice out of the darkness" inquiring if he wished to go to Rockport. Plaintiff answered no and said that he was looking for the restaurant and for his train. The voice belonged to the conductor of the Rockport train, who was standing on the platform across the way and replied that if plaintiff would come over he would be guided aright. Accepting this invitation, plaintiff crossed the track and joined the conductor. Both then started south—the conductor carrying a lantern—and walked along the platform to the end thereof, where disaster befell plaintiff through the agency of a step to the ground, which he failed to observe and of the presence of which the conductor did not warn him. The elevation of this platform above the ordinary surface of the ground was not over a foot, but a depression had been worn in the ground at the place where plaintiff stepped from the platform and plaintiff received a hard fall, that severely injured him.

Defendant's witnesses contradict those for plaintiff in these particulars. They say that the brakeman's call for Langdon was, "Langdon, twenty minutes for supper at second stop:" that defendant's station was well lighted inside and out so that the platform was suffic-

iently illuminated for the convenient use of its passengers; and that the Rockport platform was rendered reasonably safe so far as light was necessary by the lanterns in the car and that in the hand of the conductor and by the engine headlight. The conductor of the Rockport train denies that he spoke to plaintiff while the latter was on defendant's platform and states that he first knew of the presence of plaintiff when he saw him among the transferring passengers on the Rockport platform. He noticed that plaintiff seemed bewildered and, on inquiry, learned that he had become separated from his train. He then showed plaintiff the lights of his train, which then was standing at the restaurant platform, whereupon plaintiff hastened forward. The conductor called out a warning to him concerning the step, which was not heeded, and the fall resulted.

From the photographs before us, as well as from the testimony, it appears that two ways were open to plaintiff to regain his train from the position he occupied when left on defendant's platform. He could have walked down the track or crossed over to the east side and thence alongside the track to the restaurant. An embankment on the west side of the track made that way less practicable.

The negligence charged in the petition comprises these four acts of defendant: 1st, misdirecting plaintiff as to the proper place for him to alight. 2nd. Failing to have a servant at the station to safely pilot him. 3rd. Failure to provide lights and barriers for the protection of passengers in plaintiff's situation. And 4th. Maintaining a dangerous pitfall in the pathway along the east side of the track connecting the station platform with the restaurant.

Defendant, in effect, asks us to disregard the evidence of plaintiff relating to the misdirection, arguing that, as it rests solely in the testimony of plaintiff, whose hearing is affected, it should not be permitted to

weigh at all against the contradictory evidence of a number of disinterested witnesses. Plaintiff admits that his hearing is slightly impaired in one ear, but states that he "hears pretty well" and is quite positive that he heard aright in the announcement made by the brakeman. He testified in open court and the judge and jury, who observed him, were enabled much better than we are to judge of the degree of the disablement he suffered in the use of that sense and the consequent effect upon the accuracy of his impression. Moreover, he is supported by the testimony of another witness, a passenger who rode in the chair car. The evidence is substantial and we could not undertake to weigh it in the balance with that offered by defendant without arrogating to ourselves the function of the jury.

But should we accept, as true, the version of the announcement supported by the evidence of defendant, nevertheless an issue of fact was presented for the jury to determine. Plaintiff was a very old man and entirely unacquainted with defendant's road and its method of operating trains thereon. When asked by defendant's servant if he would take supper at Langdon, his attention was called to the fact that the train would stop there for that purpose. He did not know that two stops were required at that small place and quite naturally supposed that but one would be made. This was the state of his information on the subject when the station at Langdon was announced by the brakeman. Suppose the words used were, "Langdon, twenty minutes for supper at second stop." Very likely they were perfectly intelligible to passengers familiar with the road, but can we say, as a matter of law, that they were not misleading to one in plaintiff's situation. Knowing only that the supper station had been reached and observing a general exodus from the car of the passengers seated in front of him, it was not at all remarkable that plaintiff could have misunderstood the meaning of the call and, when he reached the platform, there was no servant of

defendant to be found to whom he could apply for information.

In the performance of the duties imposed by its contracts with passengers, a carrier is held to the exercise of the highest degree of care and in making announcements during the transportation that are intended to influence the actions of passengers care should be observed to make them intelligible to the different classes of people usually to be found in such public conveyances and to guard against possible misunderstanding. There is room for a reasonable mind to conclude that in calling the station in the manner under consideration and leaving the passengers to shift-for themselves defendant did not exhibit the degree of care and consideration for the safety of its passengers to be expected in the circumstances before us. Its conduct in this respect was a subject for the consideration of the jury.

Further, it is urged by defendant that plaintiff's evidence relating to the complete absence of lights in and about the station is too unreasonable to be believed and therefore should be disregarded. It was shown by defendant that this station, being at a junction point, was kept open all nights the year round. Defendant is again asking us to weigh conflicting evidence and also to assume judicial knowledge of its method of conducting its business, but, should we take it upon its own ground and say that plaintiff when standing alone on its platform was not enveloped in the Cimmerian darkness he describes, it is by no means apparent that the few oil lights, which defendant says it maintained at the station, offered him any substantial aid, either in locating his train or in selecting the safest way to reach it, nor that these lights aided by the four lanterns in the Rockport passenger coach and the one carried by the conductor of that train disclosed the step at the end of the platform where plaintiff fell. Evidently, no light from the headlight of the Rockport engine was cast on this spot. In our view of the case, the fact of the presence of lights

and their sufficiency is important chiefly in its bearing on the question of contributory negligence and, under the evidence, was an issue for the jury.

In the consideration of the remaining questions presented under the demurrer, we will assume as proven these facts. Plaintiff mistakenly left the train at its first stop through the negligent misdirection of defendant: before learning of the error the train left him: no servant of defendant was present to guide him: he had no knowledge of the way before him or the course to take in his pursuit of the train made necessary by defendant's negligence and darkness prevented him from observing the possible dangers in the path he chose.

We come now to the question of proximate cause. Defendant contends that under the uncontradicted facts in evidence the negligent act, that induced plaintiff to leave the train, should be treated as the remote cause of his injury, the proximate causes being the negligent invitation of the Rockport conductor to plaintiff to cross to the east side platform and the negligent defect at the end thereof, that this conductor was the servant of an independent carrier and the defective platform its property: and from these premises the conclusion is drawn that defendant in nowise accountable for the negligent acts of others, is not liable to plaintiff for the negligence of another carrier.

This argument appears to lose sight of the fact that defendant contracted with plaintiff to use the utmost care and diligence to carry him safely to his destination. It failed in the performance of a contractual duty when it negligently invited him to temporarily leave the train at the wrong place and then went off leaving him standing there. It put him in a place of comparative danger and left him to his own resources to extricate himself. He was under the necessity of overtaking the train if he could and the problem confronting his dazed understanding was how best to reach the train. In the darkness ahead of him both available ways—the one down

the track and that he attempted to take— were equally obscure to his vision. He could not know of the possible dangers that lurked in either path. The hole into which he fell; a culvert, which for aught he knew might have been in the railroad track; rough and uneven ties therein; the darkness around him; his entire ignorance of the locality, were all the elements of the single danger into which he was plunged by the negligent act under consideration and as such were purely incidental and auxiliary and only served to furnish a condition for the operation of the negligent act. The negligence, if any, of the Rockport conductor should be placed in the same category. One, who is compelled to grope blindly forward, is to be expected to avail himself of chance human aid and, if thereby he encounters fresh perils, they are but incidents or offshoots of his general danger. The conclusion is irresistible that defendant's negligent act was the sole producing cause of the injury.

What we have said disposes of the question of contributory negligence as one of law. Whether or not plaintiff's conduct, both in leaving the train and in his subsequent movements, filled the measure of reasonable care was for the jury to determine under all the facts before them. The demurrer to the evidence cannot be sustained.

One of the instructions given at the instance of plaintiff is as follows: "If the jury believe from the evidence that the platform situated between the defendant's track and the track of the Rockport, Langdon and Northern Railroad connected the two roads, and that both companies used said platform in transferring freight and baggage from one road to the other, and that said platform was located in such close proximity to the defendant's depot and passenger platform that the defendant might reasonably anticipate that is passengers would naturally or ordinarily be likely to go thereon, then it was the duty of the defendant to exercise ordin-

ary care to see that said platform was kept in a reasonably safe condition and if you find that the plaintiff was injured by reason of the unsafe condition of said platform and grounds, then your verdict will be for the plaintiff even though you may believe that he was warned that the restaurant was at the second stop.

A vice in this instruction is that it hypothecates a state of facts, which, if true, would clearly convict plaintiff of negligence in law that would prevent his recovery in this action. If, as the instruction assumes, plaintiff "was *warned* that the restaurant was at the second stop," then he knew that he should not leave the train at the first stop in order to go to the restaurant, for to be warned of the existence of a fact is to be made aware of it. In the case supposed, we are confronted with this situation. Plaintiff, knowing that he had not reached the supper station and not knowing how long the train would remain at the first stop, deliberately and without any occasion left the train on a dark winter night and stood on the platform until the train pulled out and left him. That such conduct would have been palpably negligent is not debatable. Much argument has been expended in the discussion of when and under what circumstances a passenger may temporarily leave his train en route without being guilty of negligence and without affecting the relation of carrier and passenger, and the principles to be gleaned from the authorities may thus be stated. A passenger, when invited by the defendant, may leave the train at a meal station to obtain a meal or other refreshment. On such occasions, a passenger may, if he chooses, walk to and fro alongside of the train for exercise and relaxation and, if he is injured, while in the exercise of reasonable care, by a negligent defect existing at a place the carrier should have anticipated would be used for such purposes, the carrier is liable.

In one case, the passenger, knowing the train would stop long enough for him to send a telegram from the station, alighted from the train, started for the tele-

graph office maintained in the station and was injured by a defect in the platform. Held, that the carrier owed him the duty to furnish him with a reasonably safe way. [Clussman v. Railroad, 9 Hun. 618.] Other instances might be mentioned where it has been held proper for the passenger to alight at intermediate points either for some purpose connected with his journey or for mere recreation. [Railway v. Overfield, 19 Tex. Civil App. 440; Parsons v. Railway, 113 N. Y. 355; Railroad v. Riley, Adm'x, 39 Ind. 568; Ormond v. Hayes, 60 Texas 180; Dodge v. Steamship Co., 148 Mass. 207; Haebrick v. Carr, 29 Fed. Rep. 298.] In all such cases it may be stated as a general rule that the carrier, having reason to anticipate that such use may be made of these conveniences provided for the service of its patrons, owes the duty to such passenger to exercise the degree of care exacted in the relation of a carrier and passenger to maintain them in a reasonably safe condition for his use.

But the cases where a passenger may temporarily leave the train at an intermediate point without being guilty of negligence are, at most, exceptions to a general rule. Ordinarily a passenger's place is in the cars provided by the carrier for the carriage of passengers. Passenger trains are run on schedule and their operators are compelled to economize in the use of time. Stops at way stations usually are very brief and the train men generally are busily engaged in the performance of imperative duties that should not be increased by passengers, who have no better reason for leaving the cars than mere curiosity or caprice. Obviously, a passenger, who from such motives leaves the train on a dark night at an intermediate station, where only a momentary stop is made, and permits it to pull out and leave him, voluntarily subjects himself to an unnecessary risk and his own negligence should be regarded as the proximate cause of an injury he may receive in his efforts to overtake the train. The carrier is under no duty to anticipate that he will do a thing so foolish nor to provide him

with a safe pathway to the train's next stopping place.

These considerations reduce the case to this position. If plaintiff was induced to leave the train by the negligent direction of defendant and, himself observing ordinary care in attempting to regain it, was injured, defendant is liable regardless of what other negligent cause co-operated in producing the injury; and, second, if plaintiff was not misdirected, but voluntarily left the train knowing that it would pull down to the restaurant platform, the negligence involved in such act is manifest and precludes a recovery under any view of the subsequent happenings disclosed by the facts in evidence.

Because of the error noted in the instruction under consideration, the judgment is reversed and the cause remanded. All concur.