CASE 19.—ACTION BY L. R. TERRELL AGAINST S. W. TOLIN,
        FOR DAMAGES FOR PERSONAL INJURIES.—March
        25, 1909.

# Tolin v. Terrell

Appeal from Boone Circuit Court.

J. W. CAMMACK, Circuit Judge.

Judgment for plaintiff, defendant appeals.    Reversed.

1.  Negligence—Proximate Cause.—To make one liable for neg-
    ligent injuries, negligence must be such that the injuries
    would not have occurred without it.
2.  Negligence—Proximate Cause—Jury Questions.—While ordi-
    narily the question of proximate cause is for the jury, where
    the injury is connected with the alleged negligence only by
    speculation and conjecture, the question is for the court.
3.  Evidence—Judicial Notice—Kicking Propensities of the Mule.
    —It is a matter of common knowledge that a mule is prone
    to kick.
4.  Animals—Personal Injuries—Contributory Negligence—Going
    Behind Mule.—It is contributory negligence to go behind a
    mule, without warning to the mule, to pick up lines for the
    purpose of placing them across the mule.
5.  Ferries—Injury to Person on Ferryboat—Proximate Cause.
    —Where plaintiff drove his mule on a ferryboat and the mule
    stood some three feet from the treadmill horse which pro-
    pelled the boat, the treadways being fenced from the drive-
    way by a frame about the height of the horse's shoulders, it
    could not have been reasonably anticipated that, because there
    was no screen between the treadway and the driveway; the
    horse would reach over the framework and bite the mule
    and cause it to kick, so that the absence of such screen was
    not the proximate cause of injuries to one who was kicked by
    the mule.

JOHN S. GAUT, T.    W. BULLITT,    A. B. ROUSE AND N. E.
RIDDELL, for appellant.

D. E. CASTLEMAN and CLORE, DICKERSON    & CLAYTON,
for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
Commissioner—Reversed.

Plaintiff, L. R. Terrell, instituted this action
against defendant, S. W. Tolin, to recover damages
for personal injuries alleged to have been caused by
the negligence of defendant. The jury returned a
verdict in his favor in the sum of $5,500, and from
the judgment based thereon this appeal is prosecuted.

At the time of plaintiff's injury, and for some time
prior thereto, S. W. Tolin owned and operated a
ferryboat between a point near Petersburg, Ky., and
Lawrenceburg, Ind. The boat was about 60 or 65
feet in length, and in the general form of a parallelo-
gram. Its width, however, was greatest in the center,
and from that point it gradually narrowed as the ends
were approached. The boat was operated by horse
power; there being an inclined treadway upon each
side of the boat, upon which the horses stood while
propelling the boat. These treadways were fenced
about with framework of about the same height as
the shoulders of the horses. There was a drive or
gangway in the center of the boat, about 9 feet 10
inches wide, between the treadways. The front feet
of the horses were raised about 2½ feet from the
floor of the gangway. When a team drove on the
gangway, it would be from 2 to 3 feet from the in-
clined treadway. At about 7:30 o'clock on the morn-
ing of November 6, 1905, plaintiff drove his wagon,
which was hitched to a team of mules, on the ferry-
boat. According to the testimony of plaintiff's wit-
nesses, he drove the team to a position where they
could not be reached by either one of the ferry horses;
but, owing to the leaky condition of the boat, he was
told by one Hartman, who was in charge of the boat,
to back his team to a position that brought them
alongside, and in biting distance, of a gray mare en-
gaged in operating the inclined treadway on the right
side of the boat. After driving his team to this posi-
tion, plaintiff unhitched the mules, as he claims, for

the purpose of having them free in case any accident
happened to the boat.   Accompanying Terrell were
four children, three boys and one girl; the oldest
boy being about 15 years of age. After unhitching the
team, plaintiff went to the end of the boat where the
ferryman was steering, and from that time on he
(Terrell) steered the boat. During the passage over
the river, a negro by the name of Thornton was
placed at the pump, which was a few feet ahead of
the team, and continued to use the pump until the
boat had about crossed the river.   When the boat was
within a few feet of the Indiana shore, Hartman took
charge of the rudder and relieved plaintiff, who then
proceeded to hitch up his team.   While he had gone,
his lines had dropped on the floor.   As he picked
up the lines and was attaching them to the brake,
the gray mare stuck out her head, bit the right-hand
mule on her rump, and the mule then kicked plaintiff,
severely and permanently injuring him.

Plaintiff's testimony was also to the effect that
there was no screen or guard between the gray mare
and the mule that would prevent the former from
biting the latter; furthermore, that the gray mare
was tied so long that she could easily reach her head
out.   Several witnesses testified that the gray mare
was in the habit of biting at stock or persons who
would come near; that this disposition of hers was
well known to Hartman, the agent in charge of the
boat.   There was also testimony to the effect that
the mule that did the kicking was of a gentle disposi-
tion, and had never, prior to that time, shown any
tendency to kick.   On the other hand, the testimony
for the defendant was to the effect that the plaintiff
drove his team upon the boat and stopped it at a
point where the wagon was next to the gray mare,
and the gray mare could not possibly have reached
the mule that, it is claimed, was bitten on the rump.
There was also testimony tending to show that, even
had the mule team been located at the point where it

is claimed by plaintiff they were stationed, it would have been a physical impossibility for the gray mare, situated and tied as she was, and engaged in propelling the boat, to stick our her head and cover the distance between her and the mule. The negro, Thornton, who was engaged in pumping, testified that when plaintiff drove on the boat, he drove in so far that the mare could not bite the mule; that the mare was tied with a halter rope in such fashion that she could not turn her head; that, as the boat approached the Indiana shore, Terrell and Hartman began talking about the mules, and Hartman remarked, "The mules will kill you some time;" that, when plaintiff went to his team to hitch up, he picked up the lines, they touched the mule, and the mule kicked; that the mare did not bite the mule. There was also testimony to the effect that the gray mare was of a gentle disposition, and had no tendency to bite stock or people who came close to her. Two witnesses for the defendant testified that the mule which did the kicking had a tendency to kick, and they had seen it attempt to kick on two occasions before that.

It is the contention of plaintiff that the failure of defendant to have a screen or guard between the gray mare and stock that might be upon the boat, coupled with the fact of the vicious tendency of the mare, of which knowledge was brought home to the agent and manager of the boat, was the direct and proximate cause of plaintiff's injury. Upon one point all the witnesses in the case agree; i. e., that plaintiff was engaged in taking up and tying his lines at the time he was injured. In order to hold defendant liable in this case, his negligence must have been such that, without it, the injury would not have happened. While it is true that the question of proximate cause is ordinarily one for the jury, yet, where the evidence connecting the plaintiff's injuries with the defendants alleged negligence amounts to mere speculation or conjecture, no case for the jury

is presented.  No one could tell, from the evidence before us, whether plaintiff was injured as the result of walking behind his mule without warning and raising the lines, or because the gray mare bit the mule.  The mule in question was three years old. In spite of the fact that there was testimony to show that this mule was of so gentle a disposition the children could play at its heels, it is a matter of common knowledge and common experience that there is no telling when or under what circumstances a mule will or will not kick.  The only way to escape danger from the feet of a mule is not to go within the radius of its heels.  He who goes within these limits assumes the risk of being kicked; and especially so when, without warning to the mule, he picks up the lines, which have been lying on the floor, passes them across the mule, and attempts to tie them at the brake.

Our conclusion in this case is that the evidence for the plaintiff utterly fails to show that the negligence of defendant was the proximate cause of plaintiff's injury.  If the gray mare had bitten or kicked the plaintiff, and injured him, such act on the part of the mare might have been within the contemplation of the owner of the boat; but certainly it could not have been reasonably anticipated that, because there was no screen on the boat, the old gray mare would reach a distance of at least three feet and bite a mule on the rump, and that the mule would kick. We therefore conclude that the court erred in not giving the peremptory instruction asked for by the defendant. If the evidence be substantially the same upon a retrial, the court will instruct the jury to find for the defendant.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.

Lassing, J., not sitting.