**SOUTHERN KANSAS RY. CO. OF TEXAS
v. EMMETT.†**

(Court of Civil Appeals of Texas. Ft. Worth.
April 15, 1911.)

1. TRIAL (§ 252*)—INSTRUCTIONS.

Where plaintiff, after purchasing a ticket for a belated train, ascertained from the agent that the train would not arrive for 31 minutes, went to a restaurant some distance from the station for breakfast, and, seeing the train pulling out from the station as he emerged from the restaurant, ran to catch it, and in doing so was thrown under the wheels by a sudden jerk as the train gathered speed, but there was no proof that any operative saw plaintiff just as he attempted to board, or as to what caused the sudden lurch, an instruction authorizing a recovery in case the engineer saw plaintiff approaching the train and from his actions knew plaintiff was intending to take passage thereon, and while plaintiff was in the act of boarding caused the train to move forward rapidly with a lurch, was erroneous.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 252.*]

2. NEGLIGENCE (§ 121*)—"PROXIMATE CAUSE."

In order to recover damages for an injury because of negligence, the burden is on plaintiff, not only to show negligence, but to prove that such negligence was the proximate cause of the injury; that is, the negligent act must have been the natural and probable cause of the injury, which ought to have been foreseen in the light of the attending circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228; Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758–5769; vol. 8, p. 7771.]

3. CARRIERS (§ 305*)—INJURY TO PASSENGER—ATTEMPT TO BOARD TRAIN—ARRIVAL—TIME—MISSTATEMENT OF AGENT—PROXIMATE CAUSE.

Plaintiff, with other members of a baseball team, having purchased tickets for passage on a belated train, asked defendant's agent when the train would arrive, and were informed that it was two minutes out of H., and that by schedule would be in in 31 minutes. Plaintiff and two of his companions then went to a restaurant some 250 yards from the depot, and, as they were coming out of the restaurant about 15 minutes after the agent had given the information specified, saw the train pulling out of the station. Plaintiff ran, and in endeavoring to board the train was thrown under the wheels by an alleged sudden jerk and was injured. *Held*, that the agent's misstatement as to the arrival of the train, assuming it to have been negligence, was not the proximate cause of plaintiff's injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1136–1139, 1245–1246; Dec. Dig. § 305.*]

4. CARRIERS (§ 287*)—INJURY TO PASSENGER—ABSENCE FROM STATION—DUTY TO HOLD TRAIN.

Where there was no proof that a railroad agent, after informing plaintiff, a prospective passenger on a belated train, that the train would not arrive for 31 minutes, either knew or consented to plaintiff's leaving the depot and getting breakfast at a restaurant some distance away, and the train arrived before the time stated, and plaintiff ran from the restaurant and endeavored to board the train as it was pulling out of the station, and was injured in so doing, no inference of negligence could be drawn from the agent's failure to delay the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

train at the depot that plaintiff might take passage thereon.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 287.*]

Speer, J., dissenting.

Appeal from District Court, Roberts County; F. P. Greever, Judge.

Action by M. M. Emmett against the Southern Kansas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hoover & Taylor, H. A. Allen, and Terry, Cavin & Mills, for appellant. Cooper & Stanford and Willis & Willis, for appellee.

CONNOR, C. J. This appeal is from a judgment in appellee's favor for the sum of $10,000 as damages for injuries received by him under substantially the following circumstances: Appellee, together with a number of other members of a baseball nine, went to the station of Glazier, Hemphill county, early on the morning of the 5th day of April, 1909, with the view of taking passage on one of appellant's trains to Roswell, N. M. When he went to the station, it was ascertained that the train was late, and appellee went to the bulletin board at the station; but, not finding thereon notification of the time of the train's expected arrival, he went into the station and inquired of the agent, having first bought tickets for the intended journey, for the time the train would arrive. He was informed that the train was two minutes out of Higgins, and that by schedule time the train would be in in 31 minutes. Appellee and others thereupon repaired to a restaurant some 250 yards away for the purpose of getting their breakfast. Coffee was made, a lunch prepared and eaten, and appellee thereupon walked to the front of the restaurant and saw that the train was in the station and, as he testified, just moving out. He thereupon called to the remainder of those who went with him for breakfast, "There she goes!" and all began running in order to catch the train. The train was proceeding west and the runners in a southerly direction down one of the main streets of the town. At the time of starting, which, according to appellee's testimony, was about 15 minutes after the information above referred to as to the train's time of arrival, the front of the engine was within about 20 feet of the street crossing; but, by the time appellee and several of the men arrived near the train, the engine, tender, baggage, express, and smoking cars had already crossed the street. As the parties ran, some of them whistled, and others hollowed to the engineer, and there was testimony to the effect that when they were within 75 yards of the train the engineer looked in their direction with, as one of the witnesses expressed it, an amused expression on his face. The evidence is conflicting as to the degree of light then

existing, and the engineer testified that he in fact did not see or hear the running persons, but that, as was his duty, he was keeping a lookout ahead. However, they continued to run in the effort to catch the train, and appellee turned off the road and ran down the side of the track some 60 feet together with the moving train, when he caught one of the cars behind the smoker and made the effort to board it. The train was going too rapidly for him to be able to do so, and he was thrown therefrom with one foot under the train, which was amputated by the wheels, and he was otherwise severely injured. The engineer testified that at the time of the accident the train was going at the rate of 20 miles per hour, and there was other testimony indicating that it was going quite rapidly. Appellee's testimony, however, on the part of several witnesses, was to the effect that it was not going at a greater rate of speed than five or six miles per hour, and it appeared that two of the party actually succeeded in boarding the train, although another one of them, like appellant, was thrown therefrom in the effort to do so. Appellee testified that he would have been able to get upon the train but for the fact that just as he was about to do so, and after his hands were upon the entrance rails, the train gave a sudden lurch forward, which broke his handhold and caused his fall. It was alleged, and there was also evidence tending to show, that no whistle was blown or bell rung as the train entered Glazier that morning, although this was also disputed by the testimony in behalf of appellant.

The negligence alleged was a failure to blow the whistle and ring the bell upon the approach of the train upon entering the station, the negligence of the agent in giving incorrect information as to the time of its arrival and negligence on the part of those operating the train in causing the lurch above referred to. The court by its charge excluded all issues of negligence save that of the alleged negligence of the station agent and of the engineer, and, after giving appropriate instructions relating to negligence, contributory negligence, and proximate cause, thus submitted these two issues:

"(7) Now, if you find and believe from the evidence in this case that plaintiff, on or about the 5th day of April, 1909, applied to defendant's ticket agent at Glazier, Tex., for the purpose of purchasing a ticket over defendant's line of railway from Glazier, Tex., to Roswell, N. M., and you further believe that plaintiff did purchase said ticket from defendant's said agent at Glazier with the intention of taking passage on defendant's regular passenger train from Glazier to Roswell, and if you further believe that after plaintiff had purchased said ticket, as above stated, if you find he did, that he applied to defendant's said ticket agent to know when

said defendant's train en route to Roswell, N. M., would arrive at Glazier, and if you further believe that defendant's said agent at Glazier gave plaintiff information that was incorrect, and you further find that said act of defendant's said agent in giving plaintiff information that was incorrect, if you find he did so, was negligence, as the term is used herein, and that such negligence, if any, was the proximate cause of plaintiff's injury, and that plaintiff was not guilty of contributory negligence, then you will find for the plaintiff.

"(8) You are further instructed that if you find and believe from the evidence in this case that on the occasion in question, and after plaintiff had purchased a ticket over defendant's line of railroad from Glazier, Tex., to Roswell, N. M., that the plaintiff left defendant's depot and went to a restaurant in said town of Glazier for the purpose of getting breakfast, and that while he was away from said depot, and before plaintiff had returned, the defendant's train carrying passengers en route from Glazier, Tex., to Roswell, N. M., arrived at Glazier, and when discovered by plaintiff was in the act of leaving said station, and you further find from the evidence that plaintiff ran to said train for the purpose of boarding same, and that while so running for the purpose of boarding said train defendant's engineer in charge of said train saw plaintiff approaching said train, and that said engineer from the movements and actions of plaintiff at said time knew that plaintiff was approaching said train for the purpose of taking passage thereon, and you further find and believe from the evidence that plaintiff did approach said train and attempt to board the same while in motion, and while in the act of boarding said train defendant's engineer caused said train to move forward very rapidly and with a lurch, and that plaintiff was thrown to the ground, and that such acts, if any, on the part of said engineer, was negligence, as hereinbefore defined, and that by reason of such negligence, if any, plaintiff sustained injuries, and that such injuries were the direct and proximate result of such negligence, if any, and that the plaintiff himself was not guilty of contributory negligence, then in that event you will find for the plaintiff and assess his damages as hereinafter charged you."

There were other charges given, including an appropriate charge upon contributory negligence; but, in the view we have taken of the case, it is unnecessary to notice them.

[1] We all conclude that the court erred in giving the eighth clause of his charge. It is undisputed that the train in question was a very heavy one and behind time and going downgrade, that the engine pulling the same was one of those large locomotives described by the witnesses as designed to quickly gather speed and get away from stations, and there is no evidence whatever that any operator of the train knew of appellee's approach thereto, except the evidence already referred to indicating that possibly the engineer saw appellee and the other boys approaching the train when some 75 yards distant. It is not pretended that either the engineer or other operative of the train saw appellee just before his attempt to board it or invited him to make the attempt, and, if it be conceded that the engineer saw the appellee and the others approaching the train under the circumstances testified to by them, it by no means establishes the fact that the engineer knew, or was bound to know in the exercise of ordinary care, that appellee and the others would, at the time and place and with the speed of the train as it undoubtedly was, make the actual effort to get thereon. If he saw them, he might well have anticipated that appellee and others desired to take passage upon the train; but the evidence shows that the train had stopped at the station the usual time, and no duty rested upon the engineer to stop his train in the prairie to enable a person to take passage. Nor does the evidence show the cause of the sudden movement or lurch of the train of which appellee complains. No witness testified that at that moment, or that at any time after the engineer saw appellee, if he did so, he opened the throttle of the locomotive or did any act not theretofore done which caused an increase of the train's speed, and it cannot be maintained that the mere happening of the "lurch" proves negligence on the part of the engineer, so that we are left to mere conjecture on this point. Moreover, we think the evidence was wholly insufficient to authorize the submission of the issue of negligence in this respect, inasmuch as before stated the evidence so wholly fails to show that the engineer at the time actually knew, or in the exercise of ordinary care ought to have known, that appellee was attempting to get upon the train, for no man is required to assume that another will undertake to do a dangerous thing. A somewhat similar case we think may here be referred to with profit, viz., that of the St. L. & S. W. Ry. Co. of Texas v. Highnote, 99 Tex. 23, 86 S. W. 923, in which it appears that a conductor of one of the railway company's passenger trains at Corsicana agreed to carry Highnote and one Martin, another policeman, to a designated point in the eastern part of the city. The conductor agreed that he would slack up enough for them to get off with safety at the place mentioned, and so informed the engineer of the arrangement. Before reaching the place agreed upon, Martin jumped off. Highnote went down on the steps of the coach, and, concluding that the train was running too fast for him to alight with safety, returned within the coach and pulled the bell cord. The coach began to slow up, and when the speed had reached its lowest, as Highnote thought, he alighted from the train

and was injured. At the time he alighted, the train was running at a speed of more than six miles per hour and too fast to alight in safety; but it was a dark night, and Highnote could not tell, and thought it was safe to do so. An ordinance of the city of Corsicana made it a penalty for operators of trains to run faster than six miles an hour within the corporate limits. The conductor was not present when Highnote alighted, and had no knowledge that he was going to alight further than the agreement that he slack up at that point. It was held, the conductor not having been present and not having directed Highnote to depart from the train at the time he did, that Highnote acted strictly upon his own judgment, and that the railway company could not be held liable for the results which flowed from his act, citing numerous authorities. Among the cases cited is that on Penn. Ry. Co. v. Aspell, 23 Pa. 147, 62 Am. Dec. 323, and from which our Supreme Court quoted with approval the following language: "From these principles (those referred to in the Aspell Case) it follows very clearly that, if a passenger is negligently carried beyond the station where he intended to stop and where he had a right to be left off, he can recover compensation for the inconvenience, the loss of time, and the labor of traveling back, because these are the direct consequence of the wrong done him. But, if he is foolhardy enough to jump off without waiting for the train to stop, he does it at his own risk, because this is gross imprudence for which he can blame nobody but himself." We conclude that the court erred in the eighth clause of his charge as assigned, and that the judgment must be reversed therefor.

The majority are of the further opinion that the evidence did not warrant the submission of the alleged negligence of the agent as a proximate cause of appellee's injury, as was done in the seventh clause of the court's charge. In aid of our view on this subject, we desire to here add a few particulars to what we have already said. Appellee testified that at the time of his inquiry he "asked the agent if we had time to get our breakfast." If the agent made any reply other than that the train was "2 minutes out of Higgins and would get there in 31 minutes by schedule time," appellee did not state it. Appellee further testified that: "After the agent gave us that information, I went up to a lunch counter to get some lunch. There were three of the ball team and the proprietor of the lunch counter went up there. * * *" That "it is about 250 yards from the depot to the restaurant," and they "hurried along in a walk. * * * That after we got there the restaurant man had to light up the restaurant, light a fire, cook our breakfast." On cross-examination he said it was an egg lunch cooked on a gas stove and took but a few minutes. Other testimony shows that the train was more than an hour late, and that, in the language of the appellee, "it might have been 25 minutes or it might have been 45 minutes" after appellee's arrival at the depot before making the inquiry of the agent, and appellee's witness Hank Eubank, whom no one contradicts, testified to the effect that it was after the conversation with the agent that the conclusion to get the lunch was formed. He says, "after that conversation we all went on the outside to talk over the matter of getting breakfast, and some of the boys decided they would go up and get something to eat."

Appellant insists that there is no evidence which shows that the information given appellee as to the time when the train would arrive was incorrect, and there is none, and none to show a want of care on the part of the agent in the ascertainment of the information, except as may be inferred from the fact, according to appellee's testimony, that the train actually arrived in Glazier within 15 minutes instead of 31 minutes, as indicated by the agent's answer. In Mo. Pacific Railway v. Foreman, 73 Tex. 311, 11 S. W. 326, 15 Am. St. Rep. 785, it was said that no duty of care is imposed upon a railway company by reason of a conductor of a train, in response to a casual question asked by a passenger, answering and giving the length of time the train managed by the conductor would stop at a station ahead upon the road. It may therefore be well doubted whether, in any event, the answer of the agent in this case constitutes actionable negligence; but assuming, as the jury were possibly authorized to assume from all the evidence, that the agent was negligent in not more accurately giving appellee the time of the probable arrival of the train, the further question is presented of whether such negligence constitutes a proximate cause of the injury.

[2] It is well settled that, in order to recover damages for an injury because of negligence, the burden is upon plaintiff to show that the negligence charged was the proximate cause of the injuries for which recovery is sought; but it is not always easy to determine just when this is the case, and it may be profitable to review some of the authorities on the subject. The leading case of T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, was one in which Bigham, the complaining party, was engaged in tying a defective gate to certain cattle pens into which Bigham had driven cattle with a view of shipment. While so engaged, the cattle were stampeded by an approaching locomotive and ran against the gate and injured Bigham. It was held, in an able opinion by Chief Justice Gaines of our Supreme Court, that the negligence of the company in maintaining the gate in its defective condition was not the proximate cause of the injuries to Bigham's person, on the ground that the agents of the company could not have foreseen that as a result of the imperfect fasten-

ings of the gate the injuries, or any injuries similar in character, would probably result. Upon the same ground it was held first by this court, and later by the Supreme Court, that the negligence of a railway company in creating and maintaining a mud hole situated in a street adjacent to the right of way was not the proximate cause of the death of one whose horse was frightened by an approaching train, and which ran away into the mud hole, throwing the deceased therein and causing his death. See F. W. & R. G. Ry. Co. v. Neely, 60 S. W. 282; Neely v. F. W. & R. G. Ry. Co., 96 Tex. 274, 72 S. W. 159.

In the case of Seale v. G. C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, it appeared that the railway company was guilty of negligence in permitting the accumulation of combustible material upon its right of way and in setting fire thereto by sparks from a passing locomotive. The fire, because of a high wind, was communicated to the grass of an adjoining pasture, and a little girl, while using reasonable care to prevent injury to herself, made an effort to extinguish the flames; but her clothing was caught, and she was burned to death. The Supreme Court, in disposing of the case, say: "From the allegations of the present petition, it is clear that, but for the attempt of the deceased to put out the fire, her death would not have ensued. This act of hers was the new agency, which, supervening upon the original wrongful act of the appellee, brought about the misfortune of which the appellant complains. The defendant should have anticipated that its negligence would endanger the property of the plaintiff. It should have anticipated that plaintiff, and perhaps others, would attempt to extinguish the fire and thereby save her property. But could it have anticipated that in this attempt the life of any one would be lost? It might have anticipated such an event in case of negligence on the part of the person killed by the flames; but no one is bound to act in such case upon the theory that parties who may possibly be affected by his conduct will be injured through their own negligence. In the event of negligence on the part of the injured person, such as is calculated to bring about the injury complained of, when it would not otherwise have happened, the original wrongdoer is excused. Hence the latter is not bound to take it into contemplation. That the company, in the present case, should be held to have contemplated that the life of any one attempting, in a careful manner, to extinguish the flames would be sacrificed, we think is unreasonable. That one exercising due care, and incurring no risks, in extinguishing a fire, should have the flames communicated to her clothes, and thereby lose her life, is something so improbable that the anticipation of it should not be charged to any one under such circumstances. Such a thing might happen, but it would be only

from some casualty which could not possibly be foreseen; and, in such cases, as we have seen, the original negligence cannot be regarded as the proximate cause of the injury. Whether the deceased was negligent or not in her attempt to put out the fire, we think that this attempt, and not the original negligence of the defendant in starting the flame, was the proximate cause of her death."

In I. & G. N. Ry. Co. v. Reiden, 48 Tex. Civ. App. 401, 107 S. W. 661, by the Court of Civil Appeals for the Fourth District, in which a writ of error was refused, it was held that the negligence of the company in maintaining a rotten cross-tie, upon which Reiden stepped in flagging an approaching train, was not the proximate cause of injuries received by the tie giving way and throwing the flagman in front of the approaching train, on the ground that the result could not reasonably have been anticipated or foreseen. For the same reason it was held, in a Kentucky case (Tolin v. Terrell, 133 Ky. 210, 117 S. W. 290), that the negligence of the owner of a horse in failing to properly confine her was not the proximate cause of another's injuries caused by the horse biting a mule which thereupon kicked and injured the complaining party. In Rozwadosfskie v. I. & G. N. Ry. Co., 1 Tex. Civ. App. 487, 20 S. W. 872, it appears that two little boys went to the station to meet and care for a drunken father on a belated train, and that the agent drove them away. It was held that the agent could not have reasonably contemplated the later arrival and injury of the father, and that hence his negligence or wrong, if any, in driving the boys off, was not the proximate cause of the father's injuries.

[3] Other cases might be cited; but those named will be sufficient, we think, and have been mentioned without effort to be literally accurate for the purpose of illustrating the rule that is well established in this state that, in order to warrant ,a finding that negligence or an act not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. In view of this rule and of the authorities cited, the majority have been unable to avoid the conviction that the negligence of the agent, if any, in misdirecting appellee as to the time of the train's arrival, was not the proximate cause of his injuries. There was evidence tending to show that the agent knew that appellee's inquiry was prompted by the desire to go and get his breakfast, and the agent could very reasonably have anticipated that, as a result of a misdirection as to the train's time, appellee would leave the station for such distance and length of time as to cause him to lose his trip, and for this appellee undoubtedly would be entitled to recover damages

for loss of time, extra car fare, and any other expense occasioned thereby; but can it be said that the agent, and hence the company, could have reasonably contemplated that appellee would later actually determine to leave the station grounds and go some 750 feet, have a breakfast cooked and eaten, and thereafter suddenly approach and attempt to board a rapidly moving train not at the station, but some 300 or 400 feet therefrom? We think not.

[4] There is nothing in the record to show that the place to which appellee and others resorted for lunch was the nearest or most available one of the kind, or that the agent had actual knowledge of the fact of appellee's conclusion or journey. Under such circumstances, was it the duty of the agent, and hence of appellant, to delay the belated train beyond the usual time, and thus inconvenience many others, because of a mere possibility that appellee may have acted upon the information given as to the time of the train's expected arrival? If not, no inference of negligence can be drawn from the failure to delay the train at the depot longer than was done in order that appellee might take passage, for where there is no duty no negligence can arise. I. & G. N. Ry. v. Vallejo, 102 Tex. 70, 113 S. W. 4, 115 S. W. 25. We are not unmindful of a class of cases, of which the case of M., K. & T. Ry. v. Price, 48 Tex. Civ. App. 210, 106 S. W. 700, is perhaps as forceful as any in its application to this case, in which it was held to be negligence to fail to give time for a passenger to return and take passage, and that the passenger, not being guilty of contributory negligence, in attempting to get upon a moving train, might recover for injuries resulting from the negligence of the company. But in this, as in all such cases, we think it will be found that there was an express or an implied consent to the passenger's absence and promise to await his return; the agent of the company knowing of the passenger's absence and diversion of journey. Here, however, appellee's absence is not shown to have been known to any of appellant's agents, and there appears no express or implied promise to await his return. The distinction between the two classes of cases is illustrated by the case of Railway v. Foreman, 73 Tex. 311, 11 S. W. 326, 15 Am. St. Rep. 785, and the same case as later tried and determined. See Railway Co. v. Foreman, 46 S. W. 834. Appellee's act in attempting to board the train was undoubtedly the direct, and the negligence, if any, of the station agent the remote, cause of appellee's injuries. The court therefore erred as assigned in giving the seventh clause of the charge quoted.

There are numerous other errors assigned; but they are of minor importance, and for various reasons we think reversible error was not presented thereby. We do not wish, however, to be understood as holding that upon proper presentation none of the questions are without merit.

We conclude that the evidence on the issue submitted does not support the verdict and judgment, and that, as unfortunate and disastrous as the accident was, the law, which is the safeguard of all, will not permit the imposition of the burden by way of damages upon the one remotely in fault, if at all, and give compensation for results of hazards and chances knowingly assumed.

The judgment is, accordingly, reversed, and the cause remanded.

SPEER, J. (dissenting). The verdict of the jury establishes the fact that appellee was not guilty of contributory negligence in his attempt to board appellant's moving train, and that his injuries were received as a proximate result of appellant's negligence in furnishing him incorrect information as to the time of the arrival of his train. The majority hold that the evidence did not warrant the submission of this last issue, for the reason that the negligence of appellant's agent in this respect could not have been the proximate cause of appellee's injuries. To this I do not agree. In the beginning one should treat the question as though appellee when injured was in the exercise of ordinary care for his own safety (for the jury have so found, as to which no complaint has been sustained), and the sole question then is, in the present state of the case, Can it be said as a matter of law that the negligence of appellant's agent in misdirecting appellee as to the time of the arrival of his train is not the proximate cause of his injuries? Ordinarily, the question of proximate cause is one of fact, and it is only in those cases where reasonable minds cannot differ upon the question that it becomes one of law, which the court may withdraw from the jury. It would serve no useful purpose to cite decisions or quote authorities merely announcing the principles which underlie the conception embodied in the phrase "proximate cause." The rule is too well established to admit of controversy, and I readily concur in the announced conclusion of the majority, backed up as it is by all of the decisions that have ever discussed that question, that an act is the proximate cause of an injury when such injury was the natural and probable consequence of the act and one which ought to have been foreseen in the light of attending circumstances. The difficulty is not in stating the rule, but in applying it to the facts of the given case. The decisions cited by the majority were made upon a state of facts so dissimilar from the one at bar as to be of little or no value as a guide in determining the question before us. There are some decisions of the courts of this state which I believe will prove more helpful in determining the question, since they are more nearly like the facts of this case. In Mills v. M., K & T. Ry. Co., 94

Tex. 242, 59 S. W. 874, 55 L. R. A. 497, it was held in effect that the negligence of the conductor of a railway train in directing a passenger to return to the ticket office and procure a ticket for passage on that train, and in starting the train before the passenger had had a reasonable time to return and board it, was the proximate cause of an injury received by such passenger in attempting to board such train while in motion. Mr. Justice Williams for the Supreme Court said: "Whether or not the negligence of the defendant constituted a proximate cause of plaintiff's injury must be determined from a consideration of everything that happened. It woud be a mistaken way of viewing the evidence to take separately each act or omission which may be found to have been negligent and inquire if it alone constituted the proximate cause. The combined effect of all may be considered, and when this is done, and if it be also found that no negligence of plaintiff caused or contributed to the result, we think it cannot be said as a matter of law that there was not the proper causal connection between the conduct of defendant and the injury to plaintiff." Practically the same holding was made by this court in M., K. & T. Ry. of Tex. v. Gist, 31 Tex. Civ. App. 662, 73 S. W. 857, and a writ of error was refused by the Supreme Court. It is true in the Gist Case that it appeared that the conductor knew of the passenger's attempt at the time to board the moving train; but an examination of the opinion will disclose that no issue of the conductor's negligence in anything he did at the time was submitted, and besides, under the charge as quoted in the opinion, the jury were authorized in effect to return a verdict for the plaintiff upon a finding that the conductor negligently started his train before the plaintiff had had a reasonable time to return with his ticket and board it, thereby assuming that such negligence was the proximate cause of the plaintiff's injuries. Such I think is the necessary effect of that decision. See, also, Missouri Pac. Ry. Co. v. Foreman, 46 S. W. 834. In Laub v. C., B. & Q. Ry. Co., 118 Mo. App. 488, 94 S. W. 550, a passenger by the wrong direction of the carrier's servant left the train at an improper place, and in an effort to reboard it a short distance away was injured in consequence of a defect at the end of the platform where the train was standing. Upon the question of proximate cause, the court said: "Defendant contends that under the uncontradicted facts in evidence the negligent act that induced plaintiff to leave the train should be treated as the remote cause of his injuries; the proximate cause being the negligent invitation of the Rockport conductor (a conductor on another carrier whose train was then standing at the place) to plaintiff to cross to the east side platform and the negligent defect at the end thereof; that this conductor was the servant of an independent

carrier, and the defective platform its property. * * * This argument appears to lose sight of the fact that defendant contracted with plaintiff to use the utmost care and diligence to carry him safely to his destination. It failed in the performance of a contractual duty when it negligently invited him to temporarily leave the train at the wrong place and then went off leaving him standing there. It put him in a place of comparative danger and left him to his own resources to extricate himself. He was under the necessity of overtaking the train if he could, and the problem confronting his dazed understanding was how best to reach the train. * * * The conclusion is irresistible that defendant's negligent act was the sole producing cause of the injury."

But, independently of the decisions which at best are on a state of facts not identical with the one under consideration, let us apply the test, which is supposed to determine all cases, of whether or not appellee's injury under the circumstances was one that ought reasonably to have been foreseen by appellant. It is undisputed that appellant's agent sold appellee a ticket for passage on that particular train, and therefore knew that he desired to board it at that time and place. It was also proved, and the verdict so affirms, that appellee made known to appellant's agent his desire to go to a restaurant for breakfast, and inquired how long before his train would arrive, and that the agent misinformed him. It is also proved, and the verdict so finds, that appellee, in attempting to board the moving train as he did, was not guilty of contributory negligence, but acted as a person of ordinary prudence would. And the jury have also found as a fact that the negligence of appellant's agent in the respect mentioned was the proximate cause of appellee's injury. What, under the circumstances, ought the company to have anticipated as a result of starting its train at the time it did? Clearly, I think that appellee, who was known to have a ticket, who desired to take passage on that train, and who was temporarily at a restaurant for breakfast, relying on the assurance of the agent as to the time of the arrival of the train, would, on discovering that the train was leaving, make an effort to reach and board it, if a reasonably prudent person under the circumstances would do so. It was appellant's duty, after having given appellee the information it did, to hold its train for the time indicated in the information or until appellee had safely boarded it. As it was, it failed to allow him the promised opportunity to board the train, and thus hindered him in his efforts to take passage, and I do not think it can be said as a matter of law that to put its cars in motion and thus suddenly put him to the choice of being left or of attempting to get upon the moving train was not the proximate cause of injuries received by him in attempt-

ing to board the train. I think it is a most reasonable probability, and one that a carrier even in the exercise of ordinary diligence ought to foresee, that a passenger for whom it had promised in effect to wait would hasten to exercise all ordinary care to board the train upon its being started. Upon the point of the company's knowing that appellee desired to board this particular train, this case is on a par with those cited by me because of the knowledge of the company through its servant, the ticket agent.

For these reasons I respectfully dissent.